THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WALTER K. FREEMAN, Appellant.

Crimes — evidence — district attorney may not attempt to create false impressions by questions concerning matters foreign to the issues.

A district attorney may not, by questions actually containing no element of misconduct and by calling witnesses as a challenge to the defendant to go into the details of transactions foreign to the issues, create false impressions that defendant has been guilty of misdeeds similar to those charged against him, when the evidence does not sustain such a conclusion.

*People* v. *Freeman*, 133 App. Div. 630, reversed.

(Argued June 16, 1911; decided November 3, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 13, 1909, which unanimously affirmed a judgment of

the Court of General Sessions of the Peace in the county of New York rendered upon a verdict convicting the defendant of the crime of grand larceny in the first degree, the specific charge being that on November 30, 1904, he obtained the sum of $2,250 from a corporation called Park, Davis & Company by false representations. The indictment contained two counts. The first one alleged the details of grand larceny by means of false representations. The false representations charged were that here presented that he had expended the sum of money in question in the purchase of platinum for the benefit of complainant when he had not, and it was alleged that both the false representations and receipt of the money occurred in the city of New York. The second count simply charged common-law larceny, but the consideration of this was withdrawn on the trial.

There is quite a history behind the alleged offense, which, however, for all needful purposes of this discussion may be very briefly summarized. The appellant was a chemist. The complainant was a large dealer in drugs, etc., having its principal place of business in the state of Michigan and a branch in the city of New York under the management of one Turrell. Appellant claimed to be able, amongst other things, to produce synthetically camphor from spirits of turpentine. In some way he and the complainant through various representatives became engaged in negotiations on this subject, resulting in a contract by which the complainant was to furnish certain moneys towards developing the aforesaid process and was to have a certain interest in the results. Amongst the other moneys to be advanced by it where those required by appellant for supplies and labor in connection with the project. It was under this arrangement and under these circumstances that the appellant, as claimed, falsely represented to the complainant's representative Turrell that he had spent money for necessary platinum when he had not and thereby secured the money in question.

*Alexander Rosenthal, David Steckler* and *Clark L. Jordan* for appellant.    Incompetent testimony was improperly admitted, whereby an atmosphere was created on the trial unfair to the defendant and so prejudicial to him as to call for a reversal of the judgment, and such incompetency and unfairness must have been clearly known to the district attorney.    (*People* v. *Crapo*, 76 N. Y. 292; *Langley* v. *Wadsworth,* 99 N. Y. 63; *Van Boppelin* v. *Bendell,* 130 N. Y. 145; *People* v. *Genung,* 11 Wend. 19; *People* v. *Brown,* 72 N. Y. 571; *People* v. *Kohler,* 93 Mich. 625; *People* v. *Un Dung,* 39 Pac. Rep. 12; *State* v. *Gleim,* 17 Mont. 31; *Bates* v. *State,* 60 Ark. 450; *People* v. *Wolf,* 183 N. Y. 472.)

*Charles S. Whitman, District Attorney* (*Robert S. Johnstone* of counsel), for respondent.    The questions concerning the McKinley, Jarvis and Lockhurst transactions tended to show criminal fraud and misconduct on the defendant's part and were properly allowed for the purpose of affecting his credibility,    (*People* v. *Irving,* 95 N. Y. 541; *People* v. *Noelke,* 94 N. Y. 137; *People* v. *McCormick,* 135 N. Y. 663; *People* v. *Webster,* 139 N. Y. 73; *People* v. *De Garmo,* 179 N. Y. 131; *People* v. *Hinksman,* 192 N. Y. 421; *La Beau* v. *People,* 34 N. Y. 223; *Gt. West. T. Co.* v. *Loomis,* 32 N. Y. 127; *Langley* v. *Wadsworth,* 99 N. Y. 61; *People* v. *Clark,* 102 N. Y. 735; *People* v. *Tice,* 131 N. Y. 651; *People* v. *Dorthy,* 156 N. Y. 237.)

HISCOCK, J.    Many allegations of error are made by the appellant.    Some of these are not well founded, and others do not have as a necessary basis any proper exception taken at the trial.    The result is that we should be able to affirm the judgment appealed from except for the unjustifiable methods, savoring too much of pettifoggery, employed by the assistant district attorney who tried the case, for the purpose of producing on the minds of the jury the impression that defendant had been guilty of various

misdeeds when as a matter of fact the evidence did not justify any such inference.

As has been stated, the charge against the appellant is that he procured money from the complainant by false representations in connection with his claim that he could synthetically produce camphor from spirits of turpentine. The case was very closely contested on the facts, and if the People could convince the jury that the appellant was in the habit of obtaining money from people by virtue of dishonest schemes of this nature, it can readily be seen that this would substantially influence the jury in their final conclusion. The attempt was made to produce this impression by improper methods.

While he was being cross-examined the appellant was asked whether he had not entered into an arrangement with one Weir to manufacture rubber synthetically, and he answered that he had. Then he was asked whether he had not represented that he could produce rubber synthetically for him, and pursuant to that representation had secured several thousand dollars. This question he answered in the negative, but being asked further did admit that on such a representation he had procured money from Weir to the amount of about eight hundred dollars, and then being asked whether he had ever returned that money to him, he responded in the negative.

Next he was asked whether he did not represent to one McKinley that he could manufacture rubber synthetically and under that representation procure from him an amount in the neighborhood of twenty thousand dollars. He answered this in the negative, but did admit that upon such representation he had procured some money from Mr. McKinley.

He was then asked whether he had not represented to one Lockhurst falsely that he had a plant equipped for the manufacture of a patented device by virtue of which representation he procured several thousand dollars and he answered in the negative.

Finally he was asked whether he had not procured money from one Jarvis by representation of ability to manufacture rubber synthetically and responded in the negative.

Subsequently Jarvis and Lockhurst were called to the stand by the prosecution and after being asked trivial questions allowed to depart. Weir had been called to the stand before this cross-examination and asked questions of a similar character and each of the witnesses stated that he knew the defendant and two of them that they had met him during the period covered by the questions making up the cross-examination heretofore referred to.

It is perfectly apparent that the only object of this cross-examination and the only purpose of parading these witnesses before the jury was to create the impression that the defendant had been engaged in fraudulent schemes similar to the one charged against him in this case and to challenge him before the jury either by his own testimony or by a cross-examination of the witnesses referred to, to go into the details of those transactions. As it was conducted, it was an entirely unjustifiable proceeding. The evidence as it was actually produced did not show that the appellant had been guilty of any dishonest conduct and there was nothing in the answers which he did give which properly called for further testimony or explanation by him. On this theory the evidence at best would be utterly immaterial and inadmissible, and under the circumstances I have no doubt that it was worse than immaterial. The entire series of questions as they were framed, his admissions that he had received certain sums of money, and the presence of the individuals from whom it was insinuated by the district attorney's questions he had improperly collected money, inevitably must have combined to produce in the minds of the jury the conclusion that appellant had been guilty of misconduct. He was forced to submit his case to the jury either under this false impression thus improperly created, or else enter on the trial of issues involving foreign transactions which had no part

in the trial. Either burden was one which the court had no right to impose upon him. While of course the court has the power to allow much latitude in the cross-examination of a witness, and while the district attorney many times may be led in good faith and legitimately to enter upon a cross-examination of a witness which proves fruitless and discloses no circumstances impeaching his credibility, there must be a limit to these practices. One of these limits should be that a district attorney shall not deliberately, by questions really containing no element of misconduct and by parading witnesses as a challenge to the defendant, create false impressions that he has been guilty of misdeeds when the evidence does not sustain any such conclusion.

The judgment of conviction should be reversed and a new trial granted.

GRAY, J. (dissenting). I dissent, for the reason that a reversal of the judgment of conviction upon the errors alleged is not justified. They were neither serious, nor prejudicial. The course of the district attorney, in asking the unnecessary questions alluded to in the opinion, may well have been open to censure; but that the evidence could prejudice the defendant's case is incredible. As to three of the four cases where these questions were asked, they contained no suggestion of false representations by the defendant in obtaining the money for his chemical productions. As to the other case, where they did enter into the question, the defendant denied the offense.

The verdict of the jury was abundantly sustained by the proofs and the Appellate Division justices have unanimously affirmed the judgment, upon their review of the trial. I think it is going too far for this court to hold that it should be now reversed for the reasons assigned.

CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur with HISCOCK, J.; GRAY, J., reads dissenting opinion.

Judgment of conviction reversed, etc.