## COURT OF APPEALS.

### June 3, 1924.

## THE PEOPLE v. ANNA BUZZI.

#### (238 N. Y. 390.)

(1) MURDER—EVIDENCE—ERRONEOUS ADMISSION OF EVIDENCE TENDING TO SHOW ATTEMPT BY DEFENDANT TO SUPPRESS TESTIMONY WHICH MIGHT PROVE HARMFUL TO HER—SUCH EVIDENCE INCOMPETENT WHEN THE ALLEGED ATTEMPTS WERE MADE BY FRIENDS OF DEFENDANT WITHOUT PROOF THAT THE ATTEMPTS WERE MADE BY HER AUTHORITY OR CONSENT.

The admission of evidence on this trial for murder, intended to show that a detective, employed by defendant's counsel, and defendant's sister attempted to secure the suppression of certain testimony which might prove harmful, justifying the inference that defendant feared such testimony, thereby showing a consciousness of guilt, was erroneous, in that it shows efforts to suppress testimony, not by the defendant herself, but by others acting for her; since no consciousness of guilt on the part of defendant can be deduced from acts of others, unless she knew of them and authorized them. Such error cannot be disregarded, where the evidence erroneously admitted constitutes the sole direct corroboration of testimony offered and intended to prove that the crime was committed by the defendant.

(2) SAME—ERRONEOUS ADMISSION OF EVIDENCE OF EXTRANEOUS FACTS TENDING TO SHOW DEFENDANT WAS DEPRAVED AND IMMORAL.

Where it appears upon the trial for murder that the defendant lived in meretricious relations with the man whom she is accused of shooting because she was informed that he intended to leave her for another woman, it was error to permit the prosecuting attorney to

repeatedly ask the defendant and her two sisters whether another sister, not produced as a witness, did not live in illicit relations with a specified man. These questions might reasonably tend to prejudice the jurors by suggesting that not only did the defendant live in meretricious relations with the deceased but that, she came of a morally depraved family.

(3) SAME.

It was error to permit the prosecution to question the defendant on cross-examination as to quarrels between defendant and her former husband while she lived with him previous to her meretricious relations with deceased, and to show quarrels between defendant and the wife of deceased. None of these matters affected the defendant's credibility, nor did they furnish a motive for the alleged murder or lend probability to the contention of the prosecution that the murder was committed by the defendant.

(4) SAME.

Although examination of the record herein shows that the evidence produced by the prosecution is sufficient, if believed, to sustain the verdict of murder in the first degree against defendant, yet the preponderance of evidence against defendant is not so clear that upon this appeal the court may disregard error on the part of the district attorney which might tend to prejudice the jurors or impede the exrecise of their calm reason in considering and weighing the testimony. These matters cannot be disregarded on the ground that they are trivial or that, to some extent, their admission rested in the discretion of the court. The cumulative effect of the admission of incompetent evidence and the introduction of extraneous prejudicial matter may well have been so great as to deprive the defendant of a fair trial.

People v. Buzzi, Supreme Court, Bronx County, July 9, 1923, reversed.

(Argued April 2, 1924; decided June 3, 1924.)

APPEAL from a judgment of the Supreme Court, rendered July 9, 1923, at a Trial Term for the county of Bronx, upon a verdict convicting the defendant of the crime of murder in the first degree.

*James F. Donnelly, Frederick J. Flynn* and *John J. Cunneen,* for appellant. The testimony relating to the so-called fabrication of evidence by a detective employed by defendant's counsel was improperly received in the case, since it was incompetent against defendant, who in the absence of proof that

she participated in its fabrication or knew of its falsity and introduced it with such knowledge, was not bound thereby; and such evidence being in contradiction of testimony adduced by the People on cross-examination of defendant and her witnesses upon collateral inquiry, by which the People were bound, was further incompetent, and its reception on both grounds was fatal to the judgment. (Nowack v. Met. St. Ry. Co., 166 N. Y. 433; Stokes v. People, 53 N. Y. 164; People v. De-Garmo, 179 N. Y. 130; Potter v. Browne, 197 N. Y. 288; Smith v. Lehigh Valley R. R. Co., 177 N. Y. 379; People v. Greenwall, 108 N. Y. 296; Amsler v. New York, 172 App. Div. 63; People v. Jackson, 210 N. Y. 154; People v. Wolf, 183 N. Y. 464; People v. Mull, 167 N. Y. 247; Noonan v. Luther, 206 N. Y. 105.) The testimony relating to the bad character and immorality of the defendant's sister, who was not called as a witness and who was claimed to be living with a man named Peck, was highly prejudicial and improper, as an attempt to destroy the credibility of the defendant and the credibility and morality of her sisters who did testify. (People v. De Garmo, 179 N. Y. 130; Potter v. Browne, 197 N. Y. 288; Stokes v. People, 53 N. Y. 164; People v. Greenwall, 108 N. Y. 296; People v. Slover, 232 N. Y. 264; People v. Freeman, 203 N. Y. 267; People v. Buffom, 214 N. Y. 53; Cosselman v. Dunfee, 172 N. Y. 507; People v. Wolf, 183 N. Y. 464; People v. Davey, 179 N. Y. 345; Simpson v. Foundation Co., 201 N. Y. 479.) The evidence relating to the quarrels between the wife of deceased and defendant and between defendant and her former husband were inadmissible either upon the question of motive or upon the question of credibility and the allowance of all of the details of these remote incidents theatrically developed by a parading of witnesses was improper and highly prejudicial to defendant and is ground for a new trial. (People v. Freeman, 203 N. Y. 267; People v. Slover, 232 N. Y. 264; People v. Davey, 179 N. Y. 345; People v. Crapo, 76 N. Y. 288; People v. Joyce, 233

N. Y. 61; People v. Dorthy, 156 N. Y. 237; People v. Johnston, 228 N. Y. 332; People v. De Garmo, 179 N. Y. 130; People v. Molineux, 168 N. Y. 264; Shaffer v. Commonwealth, 72 Penn. St. 60; Commonwealth v. Jackson, 132 Mass. 16.)

*John E. McGeehan*, District Attorney (*Albert Cohn, George B. De Luca* and *Herman J. Fleiderblum* of counsel), for respondent. The testimony of the efforts of defendant's chief investigator Honahan to suppress and fabricate evidence was competent and admissible. (Underhill's Cr. Ev. [3d ed.] § 207; People v. Shilitano, 218 N. Y. 161; Nowack v. Metropolitan Ry. Co., 166 N. Y. 433; Lacs v. Everard's Brewery, 170 N. Y. 444; Wertheimer v. N. Y. R. Co., 177 App. Div. 448; Donohue v. People, 56 N. Y. 208; Adams v. People, 9 Hun, 89; Gray v. Met. St. Ry. Co., 165 N. Y. 457; Cruikshank v. Gordon, 118 N. Y. 178.) The questions asked upon cross-examination about Mr. Peck and Emily, the defendant's sister, were proper and present no error. (Kennedy v. People, 39 N. Y. 245; Hendrickson v. People, 10 N. Y. 12; People v. Sutherland, 154 N. Y. 345; People v. Irving, 95 N. Y. 541.) The questions relating to the quarrels between the defendant and Mrs. Schneider and between defendant and her former husband were proper. There was no parading of witnesses. (People v. Webster, 139 N. Y. 73; People v. Johnston, 228 N. Y. 332; People v. Tice, 131 N. Y. 651; People v. Irving, 95 N. Y. 541.)

LEHMAN, J.:

On the evening of February 26, 1923, between five-fifteen and five-thirty o'clock, the body of Frederick Schneider was found in an automobile on Soundview avenue in the county of Bronx. He had been shot twice through the head and there was a revolver on the seat beside the body. The wounds could not have been self-inflicted, and the evidence shows almost conclusively that he was killed by a woman or at least some person

dressed as a woman a few minutes before the body was found. For more than eight years before his death Schneider had been living apart from his wife and in meretricious relations with the defendant. The defendant was arrested the same evening and held in custody until March 8th, when she was released after obtaining a writ of habeas corpus and upon giving bail in the sum of five thousand dollars as a material witness. Thereafter information was obtained by the police that the revolver, which was found in the automobile, had been borrowed by the defendant's brother-in-law, William Turk, from a man named Boyton a few days before Schneider was killed. The defendant was thereupon arrested again and was indicted for murder in the first degree and has been tried and convicted on that charge.

At the trial, William Turk testified that he was a taxicab driver and was married to defendant's sister. According to his testimony, the defendant asked him to procure a revolver for her, some time in January, 1923. The defendant repeated this request a week or ten days later and on February 21st repreached him for his failure to obtain a revolver. On Washington's birthday, the following day, he borrowed the revolver from its owner, stating he wanted to take it to his brother's cigar store for protection. On February 24th he told the defendant he had the revolver and would bring it to her the next day. At two o'clock in the morning of Sunday, February 25th, the defendant telephoned to him: "I want to see you right away and do not forget to bring that thing with you." She then told him she would meet him near her home at One Hundred and Sixty-seventh street and Grand Concourse. This testimony of Turk was to some extent corroborated by the testimony of Richard Smith, a friend both of Boynton, the owner of the revolver, and of Turk, who borrowed it from Boynton. Smith boarded with Turk and his wife, and he testified that between two and three o'clock that morning the telephone rang in Turk's apartment. He answered

the telephone; recognized the voice of the defendant and at her request called Turk to the telephone. He then went back to his bedroom and later heard the apartment door close. Turk testified further that after he had talked to the defendant over the telephone he dressed and went to meet the defendant at the place assigned, taking the revolver with him. Before he gave the revolver to the defendant he asked her why she wanted it and refused to accept the reasons she had previously given. But when she replied "Not before you give me it will I tell you," he gave her the revolver. She then told him she was going to shoot Schneider as she had learned that he was about to leave her for another woman. On the evening of February 26th he visited the defendant's apartment at about six o'clock and the defendant told him she had just returned after killing Schneider.

The defendant contradicted Turk's story completely and in every detail. She not only denied that she had killed Schneider, but denied all motive for such killing. She denied that she had telephoned to Turk on the morning of February 25th or had met him or had ever asked for, received or even seen the borrowed revolver. She attempted to show that she could not have been present at the place and time of the killing and upon this point she has the corroborating testimony of a number of disinterested and unimpeached witnesses. The trial was protracted. There was other testimony against the defendant in addition to that of Turk, and there was evidence of weight in her favor. It would serve no purpose to analyze the testimony in detail, except in so far as such analysis is necessary for the proper consideration of the questions of law raised by the defendant. Examination of the record has convinced us that the evidence produced by the prosecution is sufficient, if believed, to sustain the verdict of murder in the first degree against this defendant, and that after weighing the evidence the jury might reasonably accept the testimony of Turk and reject the defendant's denials; yet the preponder-

ance of evidence against this defendant is not so clear that upon this appeal we may disregard error on the part of the district attorney which might tend to prejudice the jurors or impede the exercise of their calm reason. in considering and weighing the testimony.

The appellant has presented on this appeal specifications of many alleged errors. Somewhat novel questions were raised at the trial by objections to the admission of evidence, and in some instances the answer to these questions is not free from doubt, but we have decided that, except in the instances which we shall discuss hereafter, the rulings of the trial justice either were correct or, if erroneous, could not have affected the result of the trial. The claim of error which we regard as most serious concerns the admission of evidence intended to show that a detective employed by the defendant's counsel and the defendant's sister, Mrs. Turk, attempted to secure the suppression of testimony which might prove harmful to the defendant. Mrs. Turk is the wife of William Turk, whose testimony for the prosecution has been briefly summarized above. Upon her direct examination she, as well as other witnesses, attempted to create at least a suspicion that William Turk and not her sister had killed Schneider. Upon her cross-examination the prosecution, over the defendant's objection, was permitted to bring out the fact that she had accompanied Honahan, the detective, to Philadelphia in order to introduce him to Boyton, the owner of the revolver. According to her testimony Boyton said at that interview that he was sorry he could not talk and nothing was said by Honahan "about having Smith lay off of his testimony." She stated that Boyton promised to see Honahan at Newark where he would have more time to talk, and subsequently she accompanied Honahan to Newark, but that Honahan did not see Boyton. The defendant on her cross-examination testified that she was not told by Honahan that he was going to Philadelphia or Newark and was not told anything about such visits

afterwards. Thereafter the prosecution was permitted to show on rebuttal by the testimony of Boyton that he had an interview with Honahan at Philadelphia and Newark. Mrs. Turk was present at the conversation at Philadelphia. The substance of the conversation at Philadelphia was that Honahan was "going to pass the buck to Billy Turk." In Newark Honahan said to him: "Here is the thing I wanted to get at, was that telephone call to Dick Smith. You tell him about that telephone call. Have Dick lay down on that, because if he don't lay down, Mr. Donnelly will say, 'Did you see Turk go out? Did you follow him out? How do you know he went out?'" After that Honahan said, "You fellows don't need to come back to New York state if you don't want to."

The prosecution seeks to sustain the admission of this testimony upon the ground that it shows an effort to suppress evidence against the defendant and to coerce witnesses. In the case of People v. Shilitano (218 N. Y. 161, 179) the court stated: "That such efforts may have some tendency to prove a consciousness of guilt seems to be a fair deduction, and, therefore, they were properly received in evidence. (Nowack v. Met. St. Ry. Co., 166 N. Y. 433, 443; Lacs v. Everard's Breweries, 170 N. Y. 444; Hoag v. Wright, 174 N. Y. 36, 46.)" The testimony of Richard Smith, which we have previously outlined, to the effect that between two and three o'clock in the morning on February 23d he heard the telephone ring, recognized the voice of the defendant and at her request called Turk to the telephone, is of evident importance to the prosecution. It constitutes the sole direct corroboration of the story told by Turk to cast upon the defendant the responsibility for the presence in the automobile of a revolver which Turk had previously borrowed. Doubtless efforts on the part of the defendant to suppress such testimony would reasonably lead to the deduction that she feared it and would

show a consciousness of guilt. Evidence to prove such efforts to suppress on the part of the defendant would be competent and admissible as part of the case in chief, and the prosecution would not be bound by any denial of such efforts on cross-examination either of the defendant or any of her witnesses. The vice of the evidence in this case is that it shows efforts to suppress testimony, not by the defendant herself, but by others acting for her, and no consciousness of guilt on the part of the defendant can be deduced from acts of others, at least unless she knew of them and authorized them.

In Nowack v. Metropolitan St. Ry. Co. (166 N. Y. 433, 448) this court held that in an action for negligence against a corporate defendant, evidence of efforts to suppress testimony by an agent employed to look up and "see to" witnesses was admissible. The court overruled the contention of the defendant "that such evidence is not admissible against a corporation without proof of some corporate act expressly authorizing an agent to tamper with witnesses," but the rule of that case may not be extended to cover evidence offered in a criminal case against an individual defendant and intended to show that an agent acting only under general agency to investigate and prepare a case or even to see witnesses had attempted to suppress unfavorable evidence. The basis of the decision in that case was that a corporation has no individual consciousness of guilt. It can feel and act only through its agents and the act of an agent of a corporation performed within the general scope of his authority is a corporate act even though no specific authority to perform the particular act had been given to the agent; and inferences against a corporate principal may, therefore, be legitimately based upon the corporate acts preformed by such an agent. The basis of the ruling by the court below in the present case is that the act of the alleged agent shows consciousness of guilt on the part of the individual defendant; but consciouness of guilt can obviously not be inferred from acts of others which the accused is not

shown to have authorized and of which she may not even have been cognizant. Consciousness of guilt is a mental attitude which may legitimately be inferred from overt acts which are the natural result of such an attitude, but only where the acts of the agent are shown to be dictated by the principal and the result of the principal's rather than the agent's attitude of mind, can they have logical probative force upon such an issue. No artificial rule applicable to an artificial entity and no rule of civil liability of a principal for the acts of his agents can supply this probative force when it is lacking. This court has never held otherwise, and the language of the opinions in the case of Nowack v. Met. St. Ry. Co. (supra) and People v. Shilitano (supra) should not be stretched beyond its application to the facts in those cases. In the Shilitano case evidence of certain witnesses was admitted that the defendant's brother and defendant's attorney had attempted to influence their testimony, but the ground upon which this court approved this ruling was that it was rendered competent by the cross-examination of these witnesses. Moreover, it appears from the opinion itself that the inference that this defendant's brother and the defendant's attorney were acting in behalf of the defendant rested not only upon their relationship but might be drawn " from the testimony given by the witnesses." We need not here analyse that testimony; it is sufficient to point out that neither the actual decision nor the reasoning of the opinion in that case supports the contention of the respondent.

We have concluded that the testimony in regard to the conversation at Newark between Honahan and Boyton at which Mrs. Turk was not present was inadmissible, but on other grounds the testimony as to the conversation at Philadelphia was competent. The evidence is simply sufficient to allow an inference that this conversation was held in pursuance of a conspiracy between Mrs. Turk and the detective to " pass the buck to Billy Turk," her husband. She had previously in her testimony tried to throw suspicion upon her husband,

and though she had on cross-examination denied the conversation with Boyton at Philadelphia the prosecution was not bound by her answer but might prove by other testimony her interest in the case, her bias and in general her relations to the case. (Hoag v. Wright, 174 N. Y. 36; Matter of Snelling, 136 N. Y. 515.) At that conversation held in Philadelphia nothing was said about the suppression of Smith's testimony of the telephone conversation or that neither Smith nor Boyton could be compelled to return to New York as witnesses, and we are, therefore, compelled to consider whether the introduction of these matters through the testimony about the conversation in Newark constitutes error which may not be disregarded.

We recognize that in a protracted case of this kind with many novel questions presented in regard to the admissibility of evidence, it is almost impossible for the trial judge to make all his rulings conform to the views of the appellate court. This case was tried with care and ability by the trial judge, and as we have pointed out, there is evdence which is sufficient, if believed, to sustain the verdict. Not lightly should the court under such circumstances set aside the verdict for trivial error, but it must do so if the record tends to show that the verdict of the jury is based not on careful consideration of competent evidence, but on prejudice or passion or incompetent evidence. The testimony of the conversation at Philadelphia might reasonably tend to cast doubt upon the credibility of Mrs. Turk's story; the incompetent testimony of the conversation at Newark upon the theory on which it was admitted might well tend in addition to cast suspicion upon the entire defense, and to give weight to the testimony of Richard Smith as to the alleged telephone conversation on February 23d by showing that the defense feared it. The question of whether such testimony was so prejudicial as to require a reversal depends upon the atmosphere of the whole trial. If nowhere in the record we found other ground for

complaint that the defendant was deprived of a fair trial by an unprejudiced jury, we might hesitate to reverse on this ground alone, but the prosecution brought into the case a number of other matters which could serve only to impede the jury in that fair and calm consideration of the evidence which a defendant whose life depends upon the outcome of the trial has a right to demand. We shall pass briefly upon these matters, for perhaps none of them is serious enough alone to affect the jury's verdict, but their cumulative effect must have been serious.

The prosecution repeatedly asked the defendant and her two sisters, who were witnesses, whether another sister, who was not produced as a witness, did not live in illicit relations with a man named Peck. All the witnesses denied knowledge of such relations, yet the constant repetition of such questions may well have introduced into the minds of the jurors a doubt as to whether they were not based upon actual fact and a suspicion and prejudice which the defendant could not counteract. (People v. Freeman, 203 N. Y. 267.) The prosecution claims that the purpose of this testimony was to lay the foundation for proof that the deceased had loaned money to Peck and that under the circumstances such proof would bear " upon the motive for the killing." We cannot see how such proof would in the slightest degree bear upon the motive for killing Schneider. On the contrary, the questions actually propounded might reasonably tend to prejudice the jurors against the defendant by suggesting that not only did the defendant live in meretricious relations with the deceased, but that she came of a morally depraved family; and if the proof had been completed it would only have tended to prejudice them further by showing that she used these relations for the financial benefit of her family. It may well be that the trial justice could permit the prosecution sufficient latitude on cross-examination to lay the foundation for other testimony that would be material and competent, but the prosecution

had no right to ask the questions under the circumstances of this case.

The prosecution was permitted to question the defendant on cross-examination as to quarrels between the defendant and her former husband, Andrew Buzzi, while she lived with him previous to her meretricious relations with Schneider, and to show quarrels between the defendant and Schneider's wife. None of these matters affected the defendant's credibility nor did they furnish a motive for the alleged murder or lend probability to the People's contention that the murder was committed by the defendant.     They naturally tended to prejudice the jury against this defendant, and the effect was heightened by the unnecessary and dramatic presentation to the jury of the defendant's former husband and Schneider's former wife as silent witnesses against the defendant.

The defendant may not complain that her meretricious relations with the deceased creates a natural prejudice against her, but she has been on trial for her life not because of her manner of living but because she has been charged with the crime of murder, and she has the right to demand a fair trial on that charge alone.     By the testimony of the conversation of the detective employed by the attorney with Boyton, the jury have been permitted to infer improperly that she was conscious of guilt; by the introduction of the other matters alluded to she has been charged before the jury with coming of a sexually depraved family, and the sympathies of the jurors aroused for the wronged wife of the deceased and perhaps for the former husband of the defendant, and their prejudice heightened against this defendant.     We cannot disregard these matters on the ground that they are trivial or that to some extent their admission rested in the discretion of the trial judge. The cumulative effect of the admission of incompetent evidence and the introduction of extraneous prejudicial matter may well have been so great as to deprive the defendant of the fair trial guaranteed to the vicious as well as to the virtuous.     We can-

not under these circumstances affirm the conviction in this case.

The judgment should be reversed and a new trial ordered.

HISCOCK, Ch. J., CARDOZO, McLAUGHLIN and CRANE, JJ., concur; POUND and ANDREWS, JJ., dissent and vote for affirmance under provisions of section 542 of the Code of Criminal Procedure.

Judgment of conviction reversed, etc.