■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN AVILES, Appellant.—Judgment, Supreme Court, Bronx County (George Covington, J.) rendered May 23, 1989, convicting defendant, after a jury trial, of murder in the second degree and two counts of attempted murder in the second degree and sentencing him to concurrent indeterminate terms of imprisonment of from twenty years to life and ten to twenty years, respectively, affirmed.

Since in our view there is no reasonable view of the evidence to support a finding that defendant committed the lesser offenses of first or second degree manslaughter but not the greater offense of second degree murder and the trial court's determination not to submit the lesser offenses as lesser included offenses was therefore proper (see, People v Glover, 57 NY2d 61, 63), we affirm. While, as the dissent properly notes, the fact that Perez's wounds proved to be fatal is not dispositive on the issue of intent to kill, the circumstances of this case led to no other reasonable conclusion. Perez was on the floor fighting with Rosello when defendant twice proclaimed, "I'm Papito, nobody beat [sic] Papito." Defendant then lifted Rosello up and plunged a five to ten inch "Rambo" knife into the side of Perez's chest, leaving a wound four and one-half to five inches deep, while Perez was lying on the ground. When Perez exclaimed, "what you doing, what you doing", defendant stabbed Perez a second time, leaving him with another wound, this one four inches deep. Upon realizing that he stabbed Perez and not Rosello, defendant began to chase Rosello, who was able to escape. Contrary to the dissent's conclusion, these circumstances can hardly be described as "equivocal" and do not present the picture of a person making "desperate and random slashing motions in the direction of several different persons".

The defendant's conduct in *People v Gonzalez* (151 AD2d 601), where he shot a small caliber handgun from a distance of between forty and fifty feet, stands in stark contrast to this case, where, at close range, defendant twice plunged a knife four to five inches into his victim, once into his chest. Thus, the court's conclusion in *Gonzalez* that the defendant's conduct was "sufficiently equivocal" to warrant a finding that he committed manslaughter in the first degree and not murder in the second degree *(supra,* at 602) lends scant support for the position of defendant herein.

The dissent's reliance on *People v Butler,* (57 NY2d 664, *revg for reasons stated in dissent of Sandler, J.,* 86 AD2d 811) is similarly unavailing. While the court in that case upheld the submission of manslaughter in the first degree as a lesser included offense of murder in the second degree despite the fact that the fatal shots were fired at close range, the court expressly noted that "with the possible exception of a contact wound, not present in this case, it is a matter of common experience that people who fire handguns do not always hit precisely the intended target." (86 AD2d, *supra,* at 815.) The same cannot be said of a person plunging a five to ten inch knife into a target so close by.

Nor does *People v Hayden* (166 AD2d 371) support the dissent's position. In *Hayden,* in which there was evidence that, during a struggle over a knife, defendant, who was not the initial aggressor, stabbed one of two men who was beating him, the court allowed submission of manslaughter in the first degree as a lesser included offense of intentional murder in the second degree. The court found it "significant" that the defendant stabbed the victim only once. (166 AD2d, *supra,* at 372.) In this case, however, defendant, the clear aggressor, stabbed the victim twice, once after the victim asked defendant what he was doing. There is nothing in these circumstances which suggests that defendant intended only to injure seriously and not to kill his victim.

Nor, in our view, is there a reasonable view of the evidence to support a finding that the stab wounds were recklessly rather than intentionally inflicted. The dissent's suggestion that in the "tangle" of bodies defendant may not have been able to see where his knife was directed is belied by the uncontroverted evidence that his acts were deliberate: he grabbed Rosello lifted him up and stabbed Perez in the side as Perez tried to get up. While defendant may have been mistaken as to the identity of the person he was stabbing, that

hardly constitutes an exonerating factor since the intent element is transferred. *(See,* Penal Law § 125.25 [1].)

Finally, despite the dissent's conclusion that there was testimony that defendant may have been under the influence of drugs, there was no evidence that defendant had actually ingested drugs or that his capacity to form the necessary intent had been affected. *(See, People v Rodriguez,* 76 NY2d 918, 921.)

The remaining grounds relied upon by the dissent have either not been preserved for appellate review or are without merit. Concur—Sullivan, J. P., Kupferman and Ross, JJ.

Kassal and Smith, JJ., dissent in a memorandum by Kassal, J., as follows: At approximately 9:00 P.M. on May 13, 1987, a street fight broke out between defendant and several men. Testimony at trial established that it began as a dispute of the "are-you-talking-to-me" variety between defendant and one Marcus "Reggie" Razor and escalated into violence when Razor left, but then returned with Hakim Richardson and Hector Calderon. Razor had told these friends that he had had a "beef" with defendant and was "getting ready to fight" him. The three, who were later joined by Eric Rosello, began to look for defendant. When they found him outside of 175 Willis Avenue, defendant, who looked "dusted", became upset because, one witness' testimony suggested, "somebody pulled something out".

The trial testimony further established that defendant then ran to his car and retrieved a five-to-ten inch knife, causing the four men to scatter and run as he returned, brandishing it. Defendant then got into his car and drove it in the direction of the fleeing men. As they split up, Calderon ran into a store and tried to get "a stick or something", but was refused. When he emerged, defendant began to pursue him on foot while making "slashing" motions with the knife.

The fight continued as Calderon obtained a thick bicycle-locking chain from Rosello and began swinging it at defendant, who grabbed it and began to pull Calderon towards him. Calderon dropped the chain and retreated, but then came back with a bat he was given by Razor's brother, which he used to strike defendant on the head. Defendant grabbed the bat and, once again, Calderon released his weapon as defendant, still holding the knife, pulled him closer. Calderon then fled toward a pool hall, where someone grabbed him from behind, and Rosello came to Calderon's aid by hitting the attacker and knocking him to the ground.

It was at this point that the decedent, Benigno Perez, joined the fracas in an attempt to assist defendant, and began fighting with Rosello. Pushing his way through a crowd of people trying to break up the fight between Perez and Rosello, who were by then struggling on the ground, defendant stabbed Perez twice before realizing that he had stabbed the "wrong man", and a "surprised" look came over his face. When Police Officer Richard Miller arrived on the scene shortly thereafter, defendant was placing Benigno Perez in his car to take him to Lincoln Hospital. Officer Miller spoke with people on the scene and then went to the hospital, where he took defendant into custody.

The primary issue on appeal is whether the trial court erred in denying defendant's written request that the charges of first and second degree manslaughter be submitted to the jury as lesser included offenses of murder in the second degree, and that attempted assault in the second degree be charged as a lesser included offense of the attempted murder counts. In seeking the lesser included charge of manslaughter in the first degree, counsel argued that there was a reasonable view of the evidence that defendant's actions evinced an intent to do serious physical injury to Rosello (see, Penal Law § 125.20) rather than cause his death.[1] The court denied the application, holding that there was no reasonable view of the evidence that would support the lesser charge.

Following summations, defense counsel renewed his request for the submission of lesser included offenses. The court again denied the application, observing that defense theories underpinning the lesser charges were inconsistent with the defense offered at trial, namely that it was Calderon, and not defendant, who had stabbed Perez.

My examination of this record leads me to conclude that it was error for the trial court to have denied defendant's application for submission of manslaughter in the first and second degrees as lesser included offenses of murder in the second degree, and of attempted assault in the second degree as a lesser included offense of attempted murder in the second degree, and I accordingly dissent.

The law is well settled that, upon the request of either party, a lesser included offense must be submitted to the jury if it meets a two-pronged test establishing (1) that it is

---

1. In an off-the-record colloquy, the trial court had previously concluded that there was no reasonable view of the evidence which would support the request to charge manslaughter in the second degree.

theoretically impossible to commit the greater crime without concomitantly committing, by the same conduct, the lesser crime; and (2) that there is a reasonable view of the evidence that would support a finding that the defendant committed the lesser offense but not the greater. *(People v Glover,* 57 NY2d 61, 63; CPL 300.50 [1], [2]; 1.20 [37].) In making this determination, a court is required to view the evidence in the light most favorable to the defendant *(People v Martin,* 59 NY2d 704, 705) and, before a court may refuse to submit a lesser included offense, " 'every possible hypothesis' but the higher crime [must] be excluded". *(People v Shuman,* 37 NY2d 302, 304; *People v Khan,* 101 AD2d 867, 868.)

In the case at bar, it is undisputed that the first prong is met, since manslaughter is a theoretical lesser included offense of intentional murder and attempted assault is a lesser included offense of attempted murder. *(See, People v Green,* 56 NY2d 427, 433, *rearg denied* 57 NY2d 775.) With respect to the second inquiry, the evidence depicts defendant as making desperate and random slashing motions in the direction of several different persons, which could just as readily have been interpreted as attempts to injure or frighten his opponents away, as to kill them. Significantly, in this quickly escalating confrontation, defendant made no threats to kill as he brandished the weapon, at times to repel an attack. *(See, People v Gonzalez,* 151 AD2d 601, 602.)

Nor is the fact that Perez's wounds proved to be fatal dispositive on the issue of defendant's intent. Rather, the circumstances of this stabbing were sufficiently equivocal that the jury may reasonably have found that the stabbing occurred as defendant attempted to aid Perez in the fight by injuring, but not killing, Rosello. *(People v Gonzalez, supra.)* The facts in *People v Hayden* (166 A2d 371) are instructive in this regard. There, this Court held that the charge of first degree manslaughter was properly submitted as a lesser included offense of murder in the second degree where defendant, who had been beaten by two men in a confrontation arising out of a traffic altercation, ran into a bakery and obtained a butcher knife, which he used to fatally stab one of his attackers in the chest. Ruling that the trial court properly submitted the lesser count, we held that a reasonable view of the evidence "support[ed] the conclusion that defendant intended to seriously physically injure, rather than kill, decedent". *(Supra,* at 372; *see also, People v Butler,* 57 NY2d 664, *revg on dissent of Sandler, J.,* 86 AD2d 811, 812, where the submission of manslaughter in the first degree as a lesser

included offense of murder in the second degree was upheld, despite the deceased's having been shot at close range, once in the head and once in the back.)

In similar fashion, the facts in the case before us do not exclude the " 'possible hypothesis' " *(People v Shuman, supra,* at 304) that defendant meant to cause serious injury, but not kill, particularly when one "bear[s] in mind the prerogative of the jury to accept or reject part or all of the defense's or the prosecution's proof". *(People v Hoag,* 51 NY2d 632, 637; *People v Johnson,* 45 NY2d 546, 549.)

I believe that it was also error for the trial court to have denied defendant's motion to charge manslaughter in the second degree as a lesser included offense of murder in the second degree. Once again, the first prong of the *Glover* test is met for this lesser charge *(People v Sullivan,* 68 NY2d 495, 502; *People v Green, supra,* at 433) and the inquiry is solely with respect to whether there was a reasonable view of the evidence that the stab wounds sustained by Perez were recklessly inflicted by defendant. Such a possibility is not precluded by the bare act of stabbing. *(See, e.g., People v Davis,* 142 AD2d 791; *People v Johnson,* 118 AD2d 589.) Rather, the evidence, viewed in the light most favorable to defendant, must exclude any possible hypothesis of recklessness. *(People v Martin, supra; People v Shuman, supra.)* Here, where the knife wielded by defendant ultimately caused fatal injuries to the very friend who had intervened on his behalf, the stabbing may reasonably be viewed as the result of reckless conduct. This is particularly true in light of the fact that defendant may have been unable to see where his knife was directed in the tangle of the two men's bodies *(see, People v Claudio,* 135 AD2d 358) or to avoid a second reckless stab in the quickly-moving struggle, despite evidence that Perez cried out, "What are you doing" after the first.

The testimony of various witnesses that defendant may have been under the influence of drugs provides a further basis for a reasonable conclusion that defendant's actions were wild and undirected, or otherwise lacking in intent. *(See, People v Lee,* 35 NY2d 826, 827; *People v Vasquez,* 104 AD2d 429.) Moreover, the trial court's ground for denying defendant's motion for the lesser included charges, *i.e.,* that it was inconsistent with the defense that Calderon had stabbed Perez, was in error, as a jury is always free to reject a defense and still find, on the remaining evidence, that defendant committed the lesser, but not the greater, crime. *(See, People v Asan,* 22 NY2d 526, 532; *People v Steele,* 26 NY2d 526, 529.)

Defendant raises additional issues which I believe were, cumulatively, sufficiently prejudicial to deprive him of a fair trial. It was error for the court to have permitted the prosecutor to elicit testimony from Calderon that he was frightened of defendant because of his "bad reputation", when defendant had neither taken the stand nor placed his character in issue. *(See,* Fisch, New York Evidence § 174, at 98-99 [2d ed 1977]; Richardson, Evidence § 150, at 121 [Prince 10th ed 1973]; *People v Mullin,* 41 NY2d 475, 479; *People v Viloria,* 160 AD2d 499.) Although the purpose of this testimony was to explain why Calderon had executed a recantation[2] before a notary public when he and defendant crossed paths at Rikers Island, no limiting instruction to this effect was given. I note, however, that Calderon's testimony that defendant accused him of being a "snitch" and threatened him when they were in prison, was properly admitted, both to establish consciousness of guilt and to explain the recantation. *(People v Plummer,* 36 NY2d 161, 163-164; *People v Griffin,* 126 AD2d 743, 744.)

In my opinion, further error may be found in the trial court's wholesale admission of testimony regarding threats allegedly made to various witnesses, which were not attributable to the defendant. Before such testimony may be admitted, a connection must be established between the defendant and the alleged effort to tamper with the witness. *(People v Buzzi,* 238 NY 390; *People v Crea,* 126 AD2d 556, 560.) Here, the approximately 100 pages of testimony regarding threats consisted largely of evidence of *anonymous* telephone calls. There was also a threat by a man named George from the neighborhood, who approached Richardson and Calderon on the street

---

2. The recantation stated as follows:

"Dear sir: I, Hector Calderon, made a statement implicating one Juan Aviles with the stabbing death of Benigno Perez. Let it be known, that I made the hereto [recantation] statement free of coercion and/or any other influences that would negate same, simply said: I do not want an innocent man to be in prison falsely due to my false statement, and to have to bear the burden of this travesty of justice for the rest of my life. The statement implicating Juan Aviles was made under duress, coercion and not of my own free will that is, the officer investigating said case threatened to implicate/charge me with the murder of one Benigno Perez. This statement was not willfully made and for all intent and purposes the degree of my participation/observation does not qualify me—as a witness against Juan Aviles. Finally, I intend to assert my United States Constitution right to Fifth Amendment regarding any questioning concerning this case.

"Respectfully submitted, Hector Calderon. Sworn to before me this 26th day of May, 1988, typed notary, signed by one Sandra Sheard, Notary Public, State of New York."

and threatened that Calderon was, "going to meet his match". The jury further heard that the decedent's brother had also approached Calderon and Richardson on the street and charged that, "They said you killed my brother". None of these threats contained attribution to defendant. *(Cf., People v Griffin, supra,* at 744.)

Finally, my review of this record leads me to conclude that the trial court's interested witness charge should not have been limited solely to the defendant's witnesses. The circumstances surrounding this incident, including the involvement of Calderon, Razor, Rosello, and Richardson, together with the defense claim on summation that Calderon may have been responsible for Perez's death, dictated application of the charge, at least to Calderon, and perhaps to other prosecution witnesses. *(See, People v Spruill,* 125 AD2d 510, 511; *People v Astol,* 118 AD2d 578.)

Accordingly, the judgment, Supreme Court, Bronx County (George Covington, J.), rendered May 23, 1989, convicting defendant, after a jury trial, of murder in the second degree (Penal Law § 125.25 [1]) and two counts of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), and sentencing him to concurrent indeterminate terms of imprisonment of from 20 years to life and 10 to 20 years, respectively, should be reversed and the matter remanded for a new trial.