■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SOLOMON˙BUTLER, Appellant. — Judgment, Supreme Court, Bronx County (Schlesinger, J.), rendered April 3, 1980, convicting defendant, after a jury trial, of manslaughter in the first degree, reversed, on the law, and the indictment dismissed. The defendant was charged in the indictment with the crime of murder in the second degree based upon the allegation that on February 11, 1979, while acting in concert with one Amos Attiko, he intentionally shot Daryl Wilson to death. At the close of the defendant's case, the prosecutor asked the court to charge manslaughter in the first degree as a lesser included offense. Defense counsel objected to such charge on the ground that the evidence demonstrated that a murder had occurred and a manslaughter charge might invite a compromise verdict. The court instructed the jury to consider the manslaughter charge, but only if defendant was acquitted of the murder charge. The jury acquitted defendant of murder in the second degree, but convicted him of manslaughter in the first degree. The difference between these two homicides is one of intent: murder in the second degree requires an intent to kill while manslaughter in the first degree requires an intent to cause serious physical

injury. On this record, no reasonable view of the evidence supports a finding that the defendant committed the lesser offense, but did not commit the greater. A review of the evidence shows an intent to cause death and not just serious injury. Three shots were fired and, according to the prosecutor's main witness, Justine Attiko, they were fired at short intervals and not in rapid succession. The deceased was shot twice at relatively close range, once in the back and once in the head. This evidence demonstrates an intent to kill rather than an intent to cause serious injury. In these circumstances the court erred in charging manslaughter in the first degree as a lesser included crime of murder in the second degree. "The court improperly gave the jury an opportunity to compromise on the facts, in their reluctance to convict defendant of the greater crime" (*People v Dugarm,* 49 AD2d 674, 675). Since the jury acquitted defendant of the charge of murder in the second degree, and the evidence shows that defendant is not guilty of manslaughter in the first degree, the indictment must be dismissed. Concur — Kupferman, J. P., Lupiano and Fein, JJ.

Sandler and Markewich, JJ., dissent in a memorandum by Sandler, J., as follows: Indicted for murder in the second degree, the defendant was acquitted of that charge after a jury trial but convicted of manslaughter in the first degree, and sentenced to a term of 6½ to 19 years. The principal issue on this appeal is presented by defendant's contention that there was no "reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater" (CPL 300.50, subd 1) and that, accordingly, the Trial Judge erred in submitting the manslaughter charge to the jury, which he did on the application of the District Attorney and over the objections of defense counsel. Since I am satisfied that there was a substantial basis for submission of the manslaughter charge, and for the jury verdict, I would affirm. The deceased, Daryl Wilson, lived on the 15th floor at 1020 Grand Concourse in an apartment directly over that occupied by Amos and Justine Attiko. Amos Attiko, also indicted in connection with Wilson's death, is a fugitive from justice. Justine was the principal prosecution witness at defendant's trial. The deceased, who had invested some $9,000 in a gypsy cab service owned by Amos Attiko, had apparently come to think that the investment had been diverted from its intended purpose, and that he was in the process of being defrauded. Justine Attiko testified that on February 11, 1979, the deceased came to her apartment on five separate occasions to speak with Amos. On the first four occasions, Justine and their son were home alone. The fifth time, Benetta Price, a friend of the defendant, was also present. On that last visit, the deceased told Justine that if her husband did not see him by 10:00 o'clock that evening, the deceased would send somebody after him. At 8:00 o'clock in the evening Amos Attiko arrived home in response to messages left for him by his wife. Justine told him what had happened and he summoned the defendant, one of Attiko's drivers, through the car service dispatcher. The defendant arrived shortly thereafter with another man, Wayne Brown. The defendant exhibited a gun and suggested that the three men go upstairs and see what Wilson was talking about. Amos Attiko retrieved a plastic bag from the top of a kitchen cabinet, which he had previously told Justine not to look into or disturb, and the three men left the apartment. After about 15 minutes during which Justine heard no sounds from the upstairs apartment, three shots were fired — first one, a second shot after an interval of three seconds, and after an additional interval of a second and a half, the third shot. The three men returned to the Attiko apartment. The defendant gave a gun to Brown who left. Then, within a few minutes, first the defendant and then Amos Attiko left and after an additional 15 minutes

Justine left with her baby and Benetta Price. After a period of time, the two women, the defendant and Amos Attiko rejoined each other and went to a restaurant. At first neither man would respond to Justine's questions as to what happened. Eventually the defendant, with his hand in a gun position, demonstrated how close he was to the deceased when "he had shot the gun." The record does not disclose how close the defendant demonstrated that he was. In response to Justine's comment that she had heard someone moving around in the bathroom after the shots, the defendant said that he was not sure if someone else had been in the apartment. The defendant further said that he could not see why the deceased fell on his face when he shot him, that he felt the deceased should have fallen backwards. The autopsy report introduced into evidence by stipulation disclosed two gunshot wounds. The first bullet entered the head close to and just in front of the left ear and exited from the right side of the head behind the ear. The second entered the body near the right posterior shoulder just to the right of the midline of the body, and exited several inches below, closer to the right arm. Police testimony established that the deceased was found lying behind the bar in a studio apartment. Three bullets were recovered in the apartment. One in the bathtub which apparently had penetrated the wall behind the bar and then entered into the bathroom, and two on the counter in the kitchen. The bullet found in the bathroom had a copper jacket. The two in the kitchen were lead bullets with no jackets. The investigating officer believed that all the bullets had been fired from the opposite side of the bar and from approximately the same angle. When asked how many weapons were used to fire the bullets, he responded: "There is definitely a possibility of one. There is a possibility of a second weapon also being used." Also introduced as part of the People's case was a stenographic statement by the defendant to an Assistant District Attorney. The defendant stated that he had been driving a steady customer, Wayne Brown, when summoned by Attiko to the apartment, drove to the apartment with Brown, where they were told of the threats, and that the three men had then gone to the apartment of the deceased. He denied that he had a gun. He said that Brown and he sat on a couch at the other end of the room while Attiko and the deceased had a prolonged argument extending over 45 minutes which culminated with Attiko firing three shots. He had seen Attiko hand Brown a plastic bag on the way to Wilson's apartment but had not known that it contained a gun until after the shooting. The defendant testified in his own behalf, and with minor variations going to credibility but not pertinent to the issue on this appeal, gave essentially the same account of the events given in his statement. Benetta Price also testified and her testimony was substantially the same as that given by Justine Attiko except that she denied having seen the defendant with a gun and denied having heard the defendant make any of the admissions testified to by Justine Attiko, although she was present during the same conversations. CPL 300.50 (subd 1) provides in pertinent part that the court in its discretion may "submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater." Subdivision 2 provides: "If the court is authorized by subdivision one to submit a lesser included offense and is requested by either party to do so, it must do so." The statute does not distinguish as to the trial court's obligation on the basis of whether the application is made by the prosecutor or by defense counsel. In this case the trial court charged manslaughter in the first degree at the request of the prosecutor and over the objections of defense counsel. In concluding that no reasonable view of the evidence justified the verdict in fact reached by this jury, the court has in effect evaluated the facts in this case as

though there were testimony by unimpeachable witnesses, who had observed all of the events leading to the homicide, that without provocation or any intervening event that might bear upon intent, the defendant, gun in hand, had approached the deceased and, at point-blank range, had aimed a gun at a vital spot and then fired the fatal shots. Whatever might have been the correct response to the issue presented by such a trial, the evidence before us is far less conclusive in every material respect. When the record is considered as a whole and considered realistically, I think it plain that the experienced Trial Judge, who had heard all the testimony, had a substantial basis to conclude that the jury might reasonably reach the verdict it in fact reached in this case. (See *People v Ross,* 70 AD2d 541.) Justine Attiko, the People's principal witness, had an obvious motive to lie. Although accepting her testimony that the defendant admitted shooting the deceased, which it quite clearly did, the jury could reasonably have believed that Justine's testimony was affected by the understandable wish to minimize the culpability of her own husband and that, accordingly, her account of what she had seen and heard may have been false or inaccurate in important respects. Moreover, she was not an eyewitness to the actual homicide. The most vital part of her testimony involved her recollection of statements made many months before, at least one of them apparently not addressed to her. This kind of testimony would present a substantial jury issue as to its accuracy and reliability even if the jury were convinced that the witness was conscientiously trying to report truthfully her recollection of what had been said. Moreover, Justine's testimony attributed to the defendant statements concerning only one aspect of what had occurred in the apartment of the deceased. Assuming that her testimony was true and accurate in all respects, the only fact that it clearly established was that the defendant admitted firing a shot that caused the deceased to fall. Her account does not exclude the possibility that shots were fired by a second person. Nor does her account provide any information as to what had occurred in the apartment before the three shots were fired. Justine Attiko and Benetta Price were in agreement that some 15 minutes had elapsed before the shots were fired. From this testimony the jury could reasonably have inferred that the homicide occurred as a result of events that occurred in the apartment, events that may have been relevant to an evaluation of the defendant's intent: a heated argument, an altercation, a provocative statement or threatening action by the deceased. Measured against the People's burden to prove intent beyond a reasonable doubt, the total gap in the People's evidence with regard to what had occurred in the apartment before the shooting was a major weakness in the prosecution's case, and was undoubtedly so evaluated by the trial prosecutor, the Trial Judge, and quite possibly defense counsel. Even more decisive on the issue presented is the testimony of the investigating police officer that two guns may have been fired. This important testimony must be considered together with the fact that Amos Attiko had removed from his own apartment and taken with him to the apartment of the deceased a plastic bag which he had instructed his wife never to look into. The possibility is clearly presented that Attiko, as well as the defendant, was armed and that Attiko may have fired one or more of the shots that were discharged in the apartment. If so, the jury could reasonably have concluded that the shot to the head may have been fired by Attiko and not by the defendant, a finding significant to the issue of the defendant's intent to kill. A fundamental error underlying the court's decision is the inference from the fact that a bullet entered the head of the deceased that the shooter must have intended to kill him. Indisputably the nature of the bullet wounds and, particularly the head wound, provided the prosecutor with a strong argument that the shooter

intended to kill the deceased. But, with the possible exception of a contact wound, not present in this case, it is a matter of common experience that people who fire handguns do not always hit precisely the intended target. The issue is classically a factual one for the jury. In a curious way it becomes apparent upon analysis that the decision of the court necessarily rests upon a finding of an irrebutable presumption that the defendant intended the natural and probable consequences of his acts, a concept which I had thought had been put to rest by the decision of the United States Supreme Court in *Sandstrom v Montana* (442 US 510). Many years ago in a murder case in which intent to kill was established far more convincingly than here, Chief Judge Cardozo wrote the definitive comment on the essential issue presented. In *People v Moran* (246 NY 100, 103), he wrote: "Whenever intent becomes material, its quality or persistence — the deranging influence of fear or sudden impulse or feebleness of mind or will — is matter for the jury if such emotions or disabilities can conceivably have affected the thought or purpose of the actor." Let us not be so quick to decide that the jury verdict did not in fact represent the result of a conscientious and thoughtful evaluation of the evidence which they, and not we, heard, nor to conclude that one or more jurors violated their oath and joined in convicting the defendant, although not convinced of his guilt beyond a reasonable doubt. The judgment of the Supreme Court, Bronx County (Schlesinger, J.), rendered April 3, 1980, convicting the defendant, after a jury trial, of manslaughter in the first degree and sentencing him to a term of 6½ to 19 years, should be affirmed.