■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FATIN JOHNSON, Appellant. [842 NYS2d 369]—

Judgment, Supreme Court, New York County (Ronald A. Zweibel, J., at suppression hearing; Renee A. White, J., at lineup application, jury trial and sentence), rendered May 18, 2004, convicting defendant of murder in the second degree and criminal possession of a weapon in the third degree, and sentencing him to concurrent terms of 25 years to life and seven years, respectively, affirmed.

The evidence at trial overwhelmingly established defendant's identity as the individual who, after a verbal argument with his brother, Amir Johnson, drew a pistol from his waistband and

---

fired a single shot at his brother as he fled. The fatal shot struck the victim in the back, with the bullet piercing a lung and the victim's heart. Both of the witnesses who identified defendant at trial had excellent and extended opportunities to view defendant during the course of the argument. Both witnesses, moreover, identified defendant as the shooter at a lineup conducted nearly four years after the homicide, following defendant's arrest in North Carolina. In addition, shortly after the shooting, defendant's ex-girlfriend encountered him outside of her apartment. She asked him what was wrong and defendant, who was visibly distressed, said "they were looking for him." In response to further inquiries, defendant twice explained that he might have killed his brother.

At the conclusion of the People's case, defendant moved for a trial order of dismissal with respect to both the count of intentional murder (Penal Law § 125.25 [1]) and depraved indifference murder (Penal Law § 125.25 [2]), arguing only that "there is no reasonable view of the evidence, there is no connection to [defendant] and the murder in this case that meet [sic] the prima facie standard." Although this motion was immediately denied, defendant renewed this motion at the close of all the evidence, contending that the count of intentional murder should be dismissed "on the ground that the People have failed to establish[ ] the intent necessary to satisfy proof beyond a reasonable doubt that [defendant] intended to in fact kill Amir Johnson." As for the depraved indifference count, defendant argued only that "the same arguments would apply, not proof beyond a reasonable doubt." Again, defendant's motion was denied. The jury then acquitted defendant of the intentional murder count and of second-degree criminal possession of a weapon (possession with intent to use unlawfully against another) and convicted him of the count of depraved indifference murder and third-degree criminal possession of a weapon.

Defendant's principal claim on this appeal is a two-fold challenge to the sufficiency and weight of the evidence supporting the verdict convicting him of depraved indifference murder. Specifically, defendant argues that his action could have supported a finding only of intentional, not reckless, murder and that, even if his conduct were reckless, the proof was deficient with regard to the "uncommon brutality" essential to a conviction for depraved indifference murder. As defendant concedes, however, his challenges to the sufficiency of the evidence are not preserved for review. Indeed, defendant not only failed to move to dismiss on the specific grounds he raises on appeal, he failed to raise any specific objection to the sufficiency of the evi-

dence in his motion to dismiss (*see People v Gray*, 86 NY2d 10, 19 [1995]; CPL 470.05 [2]).

We decline to review in the interest of justice the untimely challenges to the sufficiency of the evidence that defendant now advances. Moreover, at the most, given defendant's failure to voice any objection to the court's charge on the elements of the crime of depraved indifference murder, any challenge to the sufficiency of the evidence that defendant may be entitled to raise must be evaluated according to the court's charge as given (*see People v Sala*, 95 NY2d 254, 260 [2000] [appellate review "limited to whether there was legally sufficient evidence . . . *based on the court's charge as given without exception*"]; *People v Dekle*, 56 NY2d 835, 837 [1982] [limiting appellate review to whether "there is evidence from which a rational trier of fact could find the essential facts of the crime *as those elements were charged to the jury without exception* beyond a reasonable doubt"]).

Measured against this standard, the evidence was plainly sufficient. For several reasons grounded in the evidence, the jury reasonably could have concluded that defendant had intended not to kill but to cause serious physical injury. In this regard, we note that, according to one of the two eyewitnesses, defendant was some 30 feet away when defendant fired the pistol. Thus, the jury had a basis for concluding that defendant may not have intended that the bullet strike the victim where it did. As Justice Sandler stated, "with the possible exception of a contact wound . . . it is a matter of common experience that people who fire handguns do not always hit precisely the intended target" (*People v Butler*, 86 AD2d 811, 815 [1982, Sandler, J., dissenting], *revd on dissenting mem* 57 NY2d 664 [1982]). In addition, defendant fired only once and the jury heard no evidence that there had been a history of animosity between defendant and his brother or even that defendant had a motive to kill. For these very reasons, defense counsel urged in his summation that although the prosecution may have proven an intent to cause serious physical injury, there was no proof of an intent to kill.

The instructions to the jury on the elements of depraved indifference murder were entirely unremarkable in light of the then-applicable law. Under those instructions, the jury reasonably could have concluded, after finding that defendant intended to cause serious physical injury, that defendant acted with the recklessness required for depraved indifference murder (*see People v Trappier*, 87 NY2d 55, 59 [1995] ["Defendant, for example, could have fired at Hutchinson with the intent to cause

him only serious and protracted disfigurement and simultaneously consciously disregarded a substantial and unjustifiable risk that . . . he would create a grave risk of . . . Hutchinson's death"]; *Fama v Commissioner of Correctional Servs.*, 235 F3d 804, 812 [2d Cir 2000] [the "jury could have concluded that Fama intended to cause bodily harm to Hawkins with a reckless disregard of the ultimate result of that harm"]). To be sure, in *People v Suarez* (6 NY3d 202 [2005]), which was decided more than two years after defendant's trial, the Court of Appeals ruled otherwise, stating that "one who acts with the conscious intent to cause serious injury, and who succeeds in doing so, is guilty only of manslaughter in the first degree" (6 NY3d at 211). Defendant's jury, however was not so instructed and this statement of the law in *Suarez* only underscores that defendant's challenges to the sufficiency of the evidence are unpreserved.

Furthermore, under the instructions given to the jury, the jury also was entitled to conclude that the shooting had been committed "[u]nder circumstances evincing a depraved indifference to human life" (Penal Law § 125.25 [2]). The evidence, of course, must be sustained as legally sufficient whenever there is "any valid line of reasoning and permissible inferences [that] could lead a rational person to convict" (*People v Santi*, 3 NY3d 234, 246 [2004] [internal quotation marks and citation omitted]). Here, the jury was instructed that the People were required to prove that "the circumstances surrounding the defendant's reckless conduct was [sic] so brutal, so call[o]us and extremely dangerous and inhumane as to demonstrate an attitude of total and utter disregard for the life of the endangered person, and, therefore, so blameworthy as to warrant the imposition of the same criminal liability as that which the law imposes on a person who intentionally causes the death of another." As this element was charged to the jury, a rational juror could have concluded that the People had met this burden.

Nor can defendant prevail, in the absence of review in the interest of justice, by contending that the verdict is against the weight of the evidence. Casting his argument in those terms does not relieve defendant of the consequences of his failure to object to the court's charge on the elements of depraved indifference murder (*see People v Noble*, 86 NY2d 814, 815 [1995] ["Contrary to defendant's contention, we hold that the Appellate Division is constrained to weigh the evidence in light of the elements of the crime as charged without objection by defendant"]; *People v Cooper*, 88 NY2d 1056, 1058-1059 [1996] [same]). Indeed, a panel of this Court recently rejected the contention that in reviewing the weight of the evidence in a

depraved indifference murder case the evidence should be appraised in light of the elements of that crime as definitively interpreted by the Court of Appeals as of the time of the appeal, rather than as the elements were charged to the jury as of the time of trial (*see People v Danielson*, 40 AD3d 174 [2007], *lv granted* 2007 NY Slip Op 70483[U] [2007]). Nor is defendant persuasive in arguing that "[a]pplication of the well-established principle that an appellate court must conduct its weight review in light of the charge as given does not bar relief . . . because the court's charge was not inconsistent with [the charge to the jury in *People v Suarez*, 6 NY3d 202 (2005), *supra*]." However similar in certain respects the jury instructions may be, the sufficiency claims in *Suarez*, unlike the sufficiency claims here, were preserved for review.

Although the dissent would review defendant's challenges to the weight of the evidence in the interest of justice and reduce the conviction to manslaughter in the second degree, the dissent does not provide any explanation of why the particular facts of this case warrant an exercise of this Court's interest of justice jurisdiction. Manifestly, the facts do not warrant an exercise of that jurisdiction. As Justice Gonzalez recently stated, "in a criminal case such as this, where a defendant's argument for appellate reversal rests on the unseemly assertion that he is entitled to relief because he intentionally murdered the victim, rather than having recklessly caused his death, no plausible argument can be made that review of defendant's claim is in the interests of justice" (*People v Danielson*, 40 AD3d at 175). Indeed, in *Policano v Herbert* (7 NY3d 588 [2006]), the Court of Appeals made much the same point when it stated that "[d]efendants who commit[ ] vicious crimes but who may have been charged and convicted under the wrong section of the statute are not attractive candidates for collateral relief after their convictions have become final" (7 NY3d at 604 [brackets in original; citation omitted]). For the same reason, as this Court recognized in *Danielson*, they are not attractive candidates for interest of justice relief.

Other considerations strongly militate against interest of justice review. First, in numerous recent cases decided after the Court of Appeals clarified the governing law by issuing its per curiam opinion in *Suarez* (*supra*), this Court has declined to exercise its interest of justice jurisdiction and review essentially similar claims by defendants convicted of depraved indifference murder (*see People v Casiano*, 40 AD3d 528 [2007]; *People v Patterson*, 38 AD3d 431 [2007]; *People v Pasley*, 38 AD3d 427 [2007], *lv granted* 2007 NY Slip Op 68679[U] [2007]; *People v*

*Danielson, supra*). To exercise that power in this case confers a substantial benefit on defendant and simultaneously provides all the defendants whose depraved indifference claims have not been reviewed in the interest of justice with a no less substantial basis for believing they have been unfairly treated. Second, as the People correctly argue, if defendant had alerted the trial court to his current position, it might have submitted only the intentional murder count and first-degree manslaughter as a lesser included offense. Faced with that choice, the jury might have convicted defendant of intentional murder. Of course, it also is possible that the jury would have acquitted of the intentional murder charge. There is no rational reason, however, to suppose that defendant would not have been convicted of first-degree manslaughter. Accordingly, defendant would gain an undue benefit if this Court were to exercise its interest of justice jurisdiction. After all, in the present procedural posture of this case, a new trial on that charge is not permissible (*see People v Biggs*, 1 NY3d 225 [2003]). In short, to review defendant's current challenges in the interest of justice would accord to defendant greater relief than he reasonably could have hoped for if he had pressed at trial in a timely fashion the claims he now seeks to raise.

In this regard, finally, the particular facts of this case provide no reason to review defendant's belated challenges in the interest of justice. The principal, if not exclusive, focus of the defense at trial was on the issue of identification, not mens rea. Nothing in defense counsel's summation is consistent with defendant's current claim that his conduct bespoke only the intentional killing of his brother. And although defendant did not fire the pistol into a crowd, "oblivious to the consequences" (*People v Payne*, 3 NY3d 266, 271 [2004]), he did "endanger[ ] innocent bystanders" (*id.*). As one of the eyewitnesses testified, his children were playing on the sidewalk and he accordingly yelled at defendant not to shoot. Defendant nonetheless did so, with the bullet passing over the heads of the children.

Defendant's other contentions warrant no relief. Defendant is not entitled to suppression of identification evidence on the ground that the court denied his application for court-ordered lineups to be conducted in a sequential and double-blind fashion (*see People v McLaughlin*, 8 AD3d 146 [2004], *lv denied* 3 NY3d 678 [2004]; *People v Robinson*, 8 AD3d 95, 96 [2004], *lv denied* 3 NY3d 742 [2004]).

Defendant's ineffective assistance of counsel claims are unreviewable on direct appeal because they primarily involve matter outside the record (*see People v Love*, 57 NY2d 998

[1982]). On the existing record, to the extent it permits review, we find that defendant received effective assistance of counsel under the state and federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]).

We have considered defendant's remaining contentions, including those raised in his pro se supplemental brief, and find them unavailing. Concur—Sullivan, Williams and McGuire, JJ.

Mazzarelli, J.P., and Andrias, J., dissent in a memorandum by Andrias, J., as follows: Although the People argue in conclusory fashion that defendant's conviction for depraved indifference murder is supported by sufficient evidence and the jury's verdict was not against the weight of the credible evidence, their principal argument is that defendant's general motions for a trial order of dismissal failed to preserve his challenge to the sufficiency of the evidence supporting his conviction of depraved indifference murder and that we should not exercise our discretion to review the issue in the interest of justice.

The majority's refusal to exercise our discretion pursuant to CPL 470.15 (3) (c) to review defendant's conviction in the interest of justice relies upon the premise that a defendant who committed a vicious crime but was charged and convicted under the wrong section of the murder statute is not an "attractive" candidate for collateral relief (*see Policano v Herbert*, 7 NY3d 588, 604 [2006], quoting *People v Suarez*, 6 NY3d 202, 217-218 [2005, concurring op]). First of all, this is not a collateral attack upon defendant's conviction, but a statutorily authorized appeal. Secondly, the majority's reliance upon the "not attractive" phrase in *Suarez* takes such phrase out of context.

That context was a discussion regarding the "price to be paid for this needed revision in the Court's approach" (*Suarez* at 217), i.e., its return to a more restrictive, and sounder interpretation of the depraved indifference murder statute. The concurrence stated, in pertinent part: "In overturning convictions in such cases, the Court, in our view, performs an unpleasant but necessary duty, and by doing so will make future homicide prosecutions more sustainable, increasing the likelihood that defendants who are proven beyond a reasonable doubt to have committed intentional murder will be properly held to account for that crime. We expect, or at least hope, that the rule embodied in this and our other recent decisions will be applied prospectively, and that any impact on already completed prosecutions can be avoided. Defendants who committed vicious crimes but who may have been charged and convicted under the wrong section of the statute are not attractive candidates for

collateral relief after their convictions have become final." (*Id.* at 217-218.) However, the concurrence went on to say: "A defendant who commits intentional murder should be convicted and punished for that crime, not for a crime that he or she did not commit and that a jury may mistakenly believe is less serious. Where intentional murder is not made out, the lesser degrees of homicide, including first and second degree manslaughter, can fully serve the function they served for decades before the relatively recent, seismic expansion in depraved indifference murder prosecutions." (*Suarez* at 218.) Thus, it is clear that reductions of depraved indifference murder convictions to lesser degrees of homicide, including, in this case, second degree manslaughter, were anticipated results of the Court's decision in *Suarez* and its progeny.

Moreover, the majority's reliance upon this Court's statement in *People v Danielson* (40 AD3d 174, 175 [2007], *lv granted* 2007 NY Slip Op 70483[U] [2007]) that, "in a criminal case such as this, where a defendant's argument for appellate reversal rests on the unseemly assertion that he is entitled to relief because he intentionally murdered the victim, rather than having recklessly caused his death, no plausible argument can be made that review of defendant's claim is in the interests of justice," misinterprets this Court's interest of justice power in criminal appeals (*see* CPL 470.15 [3] [c]). However appealing that rationale may seem, and however distasteful it may be to reverse a murder conviction of a defendant a court may feel is guilty, this Court, as are all courts, is duty bound to decide the cases before it upon reason and the law as written or interpreted by established legal precedent.

It has long been held that "[t]his court is expressly empowered to set aside the verdict of guilty and order a new trial in any case where 'justice requires a new trial' (Code Crim. Pro., § 527). Thereby, there is vested in this Court a broad and discretionary power to be exercised in accordance with the conscience of the court and with due regard to the interests of the defendant and those of society. Although our ultimate concern should be the interests of justice in this particular case, our responsibilities also include a duty to correct any situation which casts a doubt upon the proper functioning of the courts in the administration of justice" (*People v Kidd*, 76 AD2d 665, 668 [1980], *appeal dismissed* 51 NY2d 882 [1980]). To the extent that the majority here relies upon evidence of guilt of some form of homicide (specifically manslaughter in the first degree, an unsubmitted lesser included offense of the intentional murder count of which defendant was acquitted) and the concept that evidence of guilt

should foreclose our review of an improperly obtained conviction, such an approach has been rejected in cases involving harmless error analysis (*see e.g. People v Jackson*, 7 NY2d 142, 145 [1959] ["it could never have been the legislative design that a court should regard errors as technical, however grave they may be, upon the hypothesis that, in any event, the jury correctly decided the case"]) and should be rejected here.

Accordingly, I would exercise our interest of justice discretion and find that, under the circumstances of this case, the verdict was not supported by legally sufficient evidence. I would further find that the verdict was against the weight of the evidence (*see generally People v Cahill*, 2 NY3d 14, 57-62 [2003]) with respect to the element of depraved indifference to human life, viewed in light of the court's charge to the jury on that element (*see People v Noble*, 86 NY2d 814 [1995]).

Defendant fatally shot his brother once in the back as he fled after defendant brandished a gun following a heated argument over money in the street. This one-on-one shooting was not "marked by uncommon brutality" (*People v Payne*, 3 NY3d 266, 271 [2004]), and did not evince the mental culpability required for depraved indifference (*see People v Feingold*, 7 NY3d 288, 293-294 [2006]; *People v Suarez*, 6 NY3d 202 [2005]). However, the evidence, including testimony that defendant brandished a revolver during the dispute and fired the gun at the fleeing victim as others, including children, stood nearby, was sufficient to support a finding that defendant acted recklessly, as the jury determined (*see People v Atkinson*, 7 NY3d 765 [2006]; *People v McMillon*, 31 AD3d 136 [2006], *lv denied* 7 NY3d 815 [2006]; *People v Dudley*, 31 AD3d 264 [2006], *lv denied* 7 NY3d 866 [2006]). Thus, I would reduce defendant's murder conviction to manslaughter in the second degree with a remand for resentencing on that count (*see* CPL 470.15 [2] [a]).

That the only defense argued at trial was misidentification did not relieve the People of their burden of proving defendant's guilt of depraved indifference murder beyond a reasonable doubt. Moreover, in dismissing the defendant's plea to have us consider the weight of the credible evidence, the majority concludes that "[h]owever similar in certain respects the jury instructions [in *Suarez*] may be, the sufficiency claims in *Suarez*, unlike the sufficiency claims here, were preserved for review." However, inasmuch as the trial court possesses neither our unique power to vacate a jury's verdict as against the weight of the credible evidence nor our statutory authority to review a conviction as a matter of discretion in the interest of justice, such statement is a non sequitur, preservation not being rele-

vant to weight of the evidence or interest of justice review (*People v Rivera*, 222 AD2d 317, 318-319 [1995]). Nevertheless, the majority claims that, by arguing that the jury's verdict is against the weight of the evidence, the defendant is not relieved of the consequences of his failure to object to the court's charge on the elements of depraved indifference murder (citing *People v Noble*, 86 NY2d 814, 815 [1995]). *Noble*, however, is distinguishable in that it involved an element that the court, without objection from defendant, completely omitted from its jury instructions. Here, regardless of the fact that the jury was charged in this case on the objective standard enunciated in *People v Register* (60 NY2d 270 [1983]) rather than the subjective standard later adopted in *People v Feingold* (7 NY3d 288, 294 [2006]), and considering the trial evidence in the light most favorable to the People, there is no view of the evidence that would reasonably support a conclusion that defendant acted under circumstances evincing a depraved indifference to human life under the *Suarez* or pre-*Suarez* standard.

I agree that defendant's other contentions, including those raised in his pro se supplemental brief are unconvincing and would not merit a reversal.