■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FATIN JOHNSON, Appellant. [891 NYS2d 306]—

Judgment, Supreme Court, New York County (Ronald A. Zweibel, J., at suppression hearing; Renee A. White, J., at lineup application, jury trial and sentence), rendered May 18, 2004, convicting defendant of murder in the second degree and criminal possession of a weapon in the third degree, and sentencing him to concurrent terms of 25 years to life and 7 years, respectively, affirmed.

In resolving defendant's previous appeal to this Court (43 AD3d 288 [2007]), we did not expressly state that we rejected defendant's claim that the verdict convicting him of depraved indifference murder was against the weight of the evidence. For this reason, the Court of Appeals reversed and remanded the

appeal to us for the purpose of making an assessment of defendant's weight of the evidence claim (10 NY3d 875, 878 [2008]). We now make explicit what was implicit in our prior opinion: the verdict was not against the weight of the evidence. A review of our prior opinion and its holdings helps explain this finding and our continuing disagreement with the dissent. Accordingly, we quote below the most relevant portions of the opinion:

"Defendant's principal claim on this appeal is a two-fold challenge to the sufficiency and weight of the evidence supporting the verdict convicting him of depraved indifference murder. Specifically, defendant argues that his action could have supported a finding only of intentional, not reckless, murder and that, even if his conduct were reckless, the proof was deficient with regard to the 'uncommon brutality' essential to a conviction for depraved indifference murder. As defendant concedes, however, his challenges to the sufficiency of the evidence are not preserved for review. Indeed, defendant not only failed to move to dismiss on the specific grounds he raises on appeal, he failed to raise any specific objection to the sufficiency of the evidence in his motion to dismiss (see People v Gray, 86 NY2d 10, 19 [1995]; CPL 470.05 [2]).

"We decline to review in the interest of justice the untimely challenges to the sufficiency of the evidence that defendant now advances. Moreover, at the most, given defendant's failure to voice any objection to the court's charge on the elements of the crime of depraved indifference murder, any challenge to the sufficiency of the evidence that defendant may be entitled to raise must be evaluated according to the court's charge as given (see People v Sala, 95 NY2d 254, 260 [2000] [appellate review 'limited to whether there was legally sufficient evidence . . . based on the court's charge as given without exception']; People v Dekle, 56 NY2d 835, 837 [1982] [limiting appellate review to whether 'there is evidence from which a rational trier of fact could find the essential facts of the crime as those elements were charged to the jury without exception beyond a reasonable doubt']).

"Measured against this standard, the evidence was plainly sufficient. For several reasons grounded in the evidence, the jury reasonably could have concluded that defendant had intended not to kill but to cause serious physical injury. In this regard, we note that, according to one of the two eyewitnesses, defendant was some 30 feet away when defendant fired the pistol. Thus, the jury had a basis for concluding that defendant may not have intended that the bullet strike the victim where it

did. As Justice Sandler stated, 'with the possible exception of a contact wound . . . it is a matter of common experience that people who fire handguns do not always hit precisely the intended target' (*People v Butler*, 86 AD2d 811, 815 [1982, Sandler, J., dissenting], *revd on dissenting mem* 57 NY2d 664 [1982]). In addition, defendant fired only once and the jury heard no evidence that there had been a history of animosity between defendant and his brother or even that defendant had a motive to kill. For these very reasons, defense counsel urged in his summation that although the prosecution may have proven an intent to cause serious physical injury, there was no proof of an intent to kill.

"The instructions to the jury on the elements of depraved indifference murder were entirely unremarkable in light of the then-applicable law. Under those instructions, the jury reasonably could have concluded, after finding that defendant intended to cause serious physical injury, that defendant acted with the recklessness required for depraved indifference murder (*see People v Trappier*, 87 NY2d 55, 59 [1995] ['Defendant, for example, could have fired at Hutchinson with the intent to cause him only serious and protracted disfigurement and simultaneously consciously disregarded a substantial and unjustifiable risk that . . . he would create a grave risk of . . . Hutchinson's death']; *Fama v Commissioner of Correctional Servs.*, 235 F3d 804, 812 [2d Cir 2000] [the 'jury could have concluded that Fama intended to cause bodily harm to Hawkins with a reckless disregard of the ultimate result of that harm']). To be sure, in *People v Suarez* (6 NY3d 202 [2005]), which was decided more than two years after defendant's trial, the Court of Appeals ruled otherwise, stating that 'one who acts with the conscious *intent to cause serious injury, and who succeeds in doing so, is* guilty only of manslaughter in the first degree' (6 NY3d at 211). Defendant's jury, however was not so instructed and this statement of the law in *Suarez* only underscores that defendant's challenges to the sufficiency of the evidence are unpreserved.

"Furthermore, under the instructions given to the jury, the jury also was entitled to conclude that the shooting had been committed '[u]nder circumstances evincing a depraved indifference to human life' (Penal Law § 125.25 [2]). The evidence, of course, must be sustained as legally sufficient whenever there is 'any valid line of reasoning and permissible inferences [that] could lead a rational person to convict' (*People v Santi*, 3 NY3d 234, 246 [2004] [internal quotation marks and citation omitted]). Here, the jury was instructed that the People were required to prove that 'the circumstances surrounding the

defendant's reckless conduct was [*sic*] so brutal, so call[o]us and extremely dangerous and inhumane as to demonstrate an attitude of total and utter disregard for the life of the endangered person, and, therefore, so blameworthy as to warrant the imposition of the same criminal liability as that which the law imposes on a person who intentionally causes the death of another.' As this element was charged to the jury, a rational juror could have concluded that the People had met this burden.

"Nor can defendant prevail, in the absence of review in the interest of justice, by contending that the verdict is against the weight of the evidence. Casting his argument in those terms does not relieve defendant of the consequences of his failure to object to the court's charge on the elements of depraved indifference murder (*see People v Noble*, 86 NY2d 814, 815 [1995] ['Contrary to defendant's contention, we hold that the Appellate Division is constrained to weigh the evidence in light of the elements of the crime as charged without objection by defendant']; *People v Cooper*, 88 NY2d 1056, 1058-1059 [1996] [same]). Indeed, a panel of this Court recently rejected the contention that in reviewing the weight of the evidence in a depraved indifference murder case the evidence should be appraised in light of the elements of that crime as definitively interpreted by the Court of Appeals as of the time of the appeal, rather than as the elements were charged to the jury as of the time of trial (*see People v Danielson*, 40 AD3d 174 [2007], *lv granted* 2007 NY Slip Op 70483[U] [2007]). Nor is defendant persuasive in arguing that '[a]pplication of the well-established principle that an appellate court must conduct its weight review in light of the charge as given does not bar relief . . . because the court's charge was not inconsistent with [the charge to the jury in *People v Suarez*, 6 NY3d 202 (2005), *supra*].' However similar in certain respects the jury instructions may be, the sufficiency claims in *Suarez*, unlike the sufficiency claims here, were preserved for review" (43 AD3d at 289-292).

In its opinion, the Court of Appeals did not disturb our holding that the evidence was legally sufficient or our holdings that both the sufficiency and the weight of the evidence had to be evaluated in light of the elements of the crime of depraved indifference murder as the elements were charged to the jury without exception. That the Court did not disturb our holding that the weight of the evidence must be evaluated in that light is unsurprising. After we decided defendant's prior appeal, the Court squarely held that "[s]itting as the thirteenth juror . . . the reviewing court *must* weigh the evidence *in light of the elements of the crime as charged to the other jurors, even when the*

*law has changed between the time of trial and the time of appeal"* (*People v Danielson*, 9 NY3d 342, 349 [2007] [emphasis added]).

Although "the differences between what the jury does and what the appellate court does in weighing evidence are delicately nuanced" (*People v Bleakley*, 69 NY2d 490, 495 [1987]), the fundamental precepts of weight of the evidence review are clear: "[W]eight of the evidence review requires a court first to determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d at 348).

Against this backdrop of the governing law, we turn to the relevant facts, limiting ourselves to those that are not disputed on appeal. Defendant and his brother, Amir, had a heated argument over money while both men were standing near a public telephone on the corner of 102nd Street and First Avenue. As Amir started to walk toward the FDR Drive, defendant called out, "Hey, look, remember you have to pay my money back." Amir responded, "I'm not going to pay you back" and came back toward defendant. When Amir was "coming on top" of defendant, as one of the eyewitnesses put it, defendant dropped the bicycle he was holding and took out a revolver from the back of his waistband. With that, Amir began to run away from defendant, heading east on 102nd Street. Defendant stood on the sidewalk with his hands extended in front of him, holding the revolver with both hands. He pulled the trigger, shooting Amir once in the back; as noted above, Amir managed to run some 30 feet before defendant shot him. The bullet entered Amir's back on the left side of his "scapula region," perforated his left lung and his heart, and exited from the left front of his chest. Before collapsing, Amir pulled a knife and threw it to the ground. Other evidence is highly relevant to one of defendant's challenges to the weight of the evidence and is discussed below.

Although the principal defense at trial consisted of a challenge to the proof of defendant's identity as the shooter,[1] overwhelming evidence—including the testimony of eyewit-

---

1. Indeed, defendant testified in his own behalf and categorically denied even being near the scene of the homicide. In addition, defense counsel also argued in summation that the People had failed to prove that the shooter acted with intent to kill because, inter alia, a single shot was insufficient to establish that intent. With respect to the depraved indifference charge, counsel

nesses who identified defendant and defendant's statement to a former girlfriend shortly after the shooting that "I might have killed my brother"—established that he was the shooter, and defendant does not now contest the weight of the evidence on that issue. Rather, with one exception, defendant's challenges to the weight of the evidence relate to the statutory element requiring proof that defendant caused his brother's death "[u]nder circumstances evincing a depraved indifference to human life" (Penal Law § 125.25 [2]).

Thus, defendant's first claim is based on the contention that even though at the time of trial the law was clear that this element "focuses not on the subjective intent of the defendant, 'but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct' " (*People v Sanchez*, 98 NY2d 373, 379-380 [2002], quoting *People v Register*, 60 NY2d 270, 277 [1983], *cert denied* 466 US 953 [1984]), the trial court's instructions anticipated the holding of the Court of Appeals more than two years after the trial that " 'depraved indifference to human life' is a culpable mental state" (*People v Feingold*, 7 NY3d 288, 296 [2006]). Accordingly, defendant argues that the court instructed the jury that this element requires proof of a culpable mental state and that the weight of the evidence does not support a finding that he had such a mental state. This argument can be disposed of readily for its premise is erroneous: the court did not charge the jury, inconsistently with the law at the time of trial, that this element was a culpable mental state. To the contrary, the court's instructions made clear that it referred to the objective circumstances surrounding the defendant's reckless conduct. Notably, the dissenters expressly recognized precisely that when they referred to "the fact that the jury was charged in this case on the objective standard enunciated in *People v Register* (60 NY2d 270 [1983]) rather than the subjective standard later adopted in *People v Feingold*" (43 AD3d at 297 [Andrias, J., dissenting]). Nor do the same dissenters now disavow their prior conclusion and accept defendant's argument that the jury was instructed in accordance with *People v Feingold*.

Second, defendant advances the one claim that relates not to the element requiring proof that death was caused "[u]nder circumstances evincing a depraved indifference to human life," but to the required reckless mens rea. Specifically, he argues that "the 'substantial' risk of death resulting from discharging a single shot on a public street did not create the 'transcendent

advanced only a perfunctory and conclusory argument that the People had failed to prove that "he acted . . . under a reckless theory."

risk' of death, *People v Sanchez*, 98 NY2d at 380, or 'risk-creating conduct creating an almost certain risk of death,' that distinguishes depraved-indifference murder from the substantial risk of death at the heart of manslaughter prosecutions. *See Policano v Herbert*, 7 NY3d at 600, citing *Sanchez*, 98 NY2d at 378." This argument asks us to do what we may not do as a matter of law: engage in weight of the evidence review on the basis of the elements as defined by case law rather than as they were defined by the court's charge to the jury. At no point did the court instruct the jury that the risk of death had to be a "transcendent" one or that defendant's conduct had to "create[ ] an almost certain risk of death." Nor did defendant ever protest the absence of such instructions. Thus, this argument flies in the face of our previous decision that any review of the evidence, for weight as well as sufficiency, had to be based on the court's charge as given without objection. Defendant provides no basis for departing from the law of the case doctrine and the dissent does not contend we should.[2]

Third, defendant argues that under *People v Gonzalez* (1 NY3d 464 [2004]) and *People v Payne* (3 NY3d 266 [2004]), "[a]t the time of [his] trial . . . a typical one-on-one shooting did not qualify as a depraved indifference murder." This argument suffers from the same fatal flaw as the last one. At no point did the court instruct the jury that a "one-on-one shooting," typical or otherwise, "did not qualify as a depraved indifference murder." Nor did defendant ever protest the absence of any such instruction. As the dissent essentially adopts this argument, we discuss it at greater length below.

Fourth, defendant argues that his brother's "own aggressive gesture during the brother's loud, excited argument make [his] response appear to be other than 'callous' and 'inhumane' and more typical of the type of behavior that, regrettably, sometimes results as arguments escalate." This is unpersuasive. The jury expressly was instructed to make a judgment that in substantial part is a moral one in evaluating the evidence bearing on the requirement of proof that defendant acted "[u]nder circumstances evincing a depraved indifference to human life." Thus, the jury repeatedly was instructed that "[a] person acts with depraved indifference to human life when in the *judgment* of the jury his conduct, beyond being reckless, is so *wanton*, is so

---

2. The dissent, however, adopts a variant of this argument when it contends that "defendant's conduct manifested an intent to kill rather than depravity or indifference to human life." For the reasons just discussed, this contention is meritless. But there are additional reasons, discussed below, why it is untenable.

deficient in the *moral sense and* [*sic*] *concern,* so *devoid* of regard for life, the lives of others, and so *blameworthy* as to warrant the same criminal liability as that which the law imposes on a person who intentionally causes the death of another" (emphasis added) (*see People v Russell,* 91 NY2d 280, 287-288 [1998]).

Even assuming, arguendo, that a different judgment by the jury on this issue "would not have been unreasonable" (*People v Danielson,* 9 NY3d at 348) "the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*id.*). That defendant shot his own brother surely is a fact the jury reasonably could have viewed as highly significant in making the moral judgment it was instructed to make. That defendant did so after assuming a shooter's stance and taking aim at his fleeing brother—who clearly presented no threat whatsoever to him at that juncture[3] —also justifies the jury's judgment. That defendant fired the gun—and, as discussed below, on a sidewalk on which children and others were present—because his brother refused to repay a debt provides additional justification. Of course, moreover, as we held in our prior opinion, the evidence provided the jury with a substantial basis for concluding that defendant intended for the bullet to hit his brother and cause serious physical injury (43 AD3d at 290-291). Shooting someone, and shooting him or her in the back, can provide a powerful basis for a jury finding that the shooter thereby "create[d] a grave risk of death" (Penal Law § 125.25 [2]) and was "aware" of and "consciously disregard[ed]" that risk and its "substantial and unjustifiable" nature (Penal Law § 15.05 [3]).

Finally, defendant argues that although "there were bystanders in the area, including two children . . . there was no concrete evidence presented that any of them were 'actually endangered.' *See People v Suarez,* 6 NY3d at 213, fn. 7." Relatedly, defendant argues that "[t]he only testimony . . . regarding the children, came from their father, who naturally was concerned for their safety. Even according to him, however, the single bullet passed over their heads, hitting the intended target and never significantly endangering the children." We reject this argument for numerous reasons. First, the jury was never instructed that there was any requirement that, apart from defendant's brother, any other person or persons had to be "actually" or "significantly" endangered, and defendant never objected to the absence of any such instruction. Thus, defendant once again incorrectly asks us to weigh the evidence in ac-

---

**3.** For this reason, we are unpersuaded by defendant's reliance on Amir's previous "threatening gesture."

cordance not with the elements of the offense as they were charged without objection but as defendant now maintains they should have been charged.

Second, this argument erroneously assumes that in determining the relevant question—i.e., whether, as the jury was charged, defendant's conduct was "so wanton, . . . so deficient in the moral sense and concern, so devoid of regard for life, the lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes on a person who intentionally causes the death of another person"—the jury was required to consider the path the bullet actually happened to travel. As the jury was instructed, however, the focus properly was placed on his *"conduct."* The conduct he committed was firing a shot from a deadly weapon on a sidewalk in the direction of children and others. Justice Sandler's observation adopted by a unanimous Court of Appeals, again merits quotation: "it is a matter of common experience that people who fire handguns do not always hit precisely the intended target" (*People v Butler*, 86 AD2d at 815). The jury was entitled to judge defendant's conduct in light of this commonsense truth. Furthermore, the contention that the children were not "significantly endangered" is ipse dixit, as there was no testimony that the bullet passed over the heads of the children by some "significant" let alone "safe" margin.

Third, defendant's statement that the children's father "naturally was concerned for their safety" undermines his position. The evidence established that the father "got very scared" when defendant took out the revolver because his children were in the line of fire and he implored defendant, "Do not shoot, do not shoot, because my kids are there." Defendant ignored that plea. The point of course is that the jury was entitled to conclude that the fact that defendant was not concerned for the safety of children was highly relevant to the judgment it was required to make about how "wanton, deficient in the moral sense and concern, devoid of regard for life, the lives of others" and blameworthy defendant's conduct was.

Fourth, defendant's current position that no others were significantly endangered stands in sharp contrast to his position at trial. The other eyewitness, Winston Nichols, was standing five or six feet from defendant and his brother when they were arguing and defendant's brother was between two and four feet from him when he fled past him after defendant drew the revolver. Defense counsel elicited the following testimony on cross-examination of Mr. Nichols:

"Q: As a matter of fact, you were almost in the line of fire, right?

"A: No, I wouldn't say in—yeah, you could say that. Because, you know, five feet away [from defendant].

"Q: Anything could happen, right?

"A: Anything could happen."

Obviously, the jury reasonably could have decided that it was appropriate in making its judgment to consider the very point defense counsel took pains to make on cross-examination.[4]

As for the dissent, it asserts that "[t]his one-on-one shooting was not 'marked by uncommon brutality' (*People v Payne*, 3 NY3d 266, 271 [2004]), and did not evince the mental culpability required for depraved indifference (*Sanchez*, 98 NY2d at 380)." In relying on the one-on-one character of the shooting and in conclusorily claiming that the shooting was not "marked by uncommon brutality," the dissent impermissibly weighs the evidence in light of the elements as the dissent believes the jury should have been instructed, not as it actually was instructed. The jury was not instructed to consider, consistently with *People v Payne*, decided after defendant's trial, that the shooting was a "one-on-one" shooting or whether it was "marked by uncommon brutality." Accordingly, neither the one-on-one character of the shooting nor the dissent's belief that it was not "marked by uncommon brutality" can support the dissent's conclusion that the jury was not "justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d at 348). Surely the jury would be astonished to learn that for these reasons its verdict was not justified.

The dissent fails in its effort to defend its disregard of the actual instructions to the jury on the elements of depraved indifference murder and defendant's failure to voice any objection to those instructions. The dissent reasons that "*People v Payne* (*supra*) and *People v Gonzalez* (1 NY3d 464 [2004]) . . . do not hinge on the substance of the court's charge to the jury. Rather, those cases, as well as *People v Hafeez* (100 NY2d 253 [2003]),

---

4. Relatedly, defendant unpersuasively argues that the facts of this case stand in sharp contrast to the facts of *People v Sanchez* (98 NY2d 373 [2002]), where the Court of Appeals upheld a depraved indifference murder conviction, because the defendant in *Sanchez* "fired blindly around a door into an area where children were playing." In fact, however, the Court's opinion states that the eyewitness "first observed defendant walking through the entrance doorway from the hallway where her two grandchildren were playing in the foyer, *away from* [the decedent], who was behind the partially opened door. Then she saw defendant abruptly turn around, fire a gun *pointed at [the decedent's] chest* and flee" (98 NY2d at 375-376 [emphasis added]). Moreover, the evidence established that "the gun was fired not more than 12-18 inches from [the decedent's] chest" (*id*. at 376). In short, the evidence that others were endangered is more compelling here than in *Sanchez*.

made clear that a one-on-one shooting or knifing (or similar killing) can never, with rare exception, qualify as depraved indifference murder." Because the Court of Appeals did not discuss in *Payne, Gonzalez* or *Hafeez* the trial court's instructions to the jury, it hardly follows that the instructions are irrelevant to an assessment of the weight of the evidence. Apart from this logical flaw, the dissent's attempt to defend its disregard of the instructions to the jury on the elements of depraved indifference is contradicted by the unequivocal holding in *People v Danielson (supra)*. To repeat it, "[s]itting as the thirteenth juror . . . the reviewing court *must* weigh the evidence in light of the elements of the crime as charged to the other jurors, even when the law has changed between the time of trial and the time of appeal" (9 NY3d at 349 [emphasis added]). This mandate to the Appellate Divisions conclusively refutes the dissent's position.[5]

As for the dissent's assertion that the shooting "did not evince the mental culpability required for depraved indifference," the dissent explains it only to the extent it goes on to assert "that defendant's conduct manifested an intent to kill rather than depravity or indifference to human life, as that term is generally understood."[6] For several reasons, this assertion of a "manifest[ ] . . . intent to kill" provides no rational reason to hold that the verdict is against the weight of the evidence.

As noted above with respect to the variant of this assertion pressed by defendant, at no point during its charge did the

---

5.   *People v Dickerson* (42 AD3d 228 [2007], *lv denied* 9 NY3d 960 [2007]), does not provide a shred of support for the dissent's position. Nothing in *Dickerson* remotely suggests that the instructions to the jury on the elements of depraved indifference murder are not controlling in assessing the sufficiency or weight of the evidence. Indeed, the instructions to the jury, and whether the jury was charged in accordance with the holding of *People v Feingold* (7 NY3d 288 [2006], *supra*) that depraved indifference is a culpable mental state, are not discussed in *Dickerson*. If the jury was charged in accordance with *People v Feingold*, the panel in *Dickerson* would not have had any reason for discussing the instructions. Alternatively, the panel could have determined that regardless of whether the jury was properly instructed on the elements of depraved indifference murder, the verdict was supported by legally sufficient evidence and was not against the weight of the evidence. In any event, without citing to anything in *Dickerson*, the dissent simply assumes that it stands for the proposition, squarely contradicted by *People v Danielson*, that the weight of the evidence can be assessed on the basis of the elements as they should have been charged to the jury, not as the elements actually were charged to the jury without objection.

6.   Of course, how that term is "generally understood," whatever the dissent believes that understanding to be, is irrelevant. Under *People v Noble* and *People v Danielson*, only the jury's understanding of the term in light of the court's instructions is relevant, a subject the dissent fails to address.

court instruct the jury that the risk had to be a "transcendent" one or that defendant's conduct had to "create[ ] an almost certain risk of death." Rather, as a majority of this Court expressly stated, under the instructions given to the jury it "reasonably could have concluded that defendant had intended not to kill but to cause serious physical injury" and, in disregard of a grave risk that death would result, "acted with the recklessness required for depraved indifference murder" (43 AD3d at 290-291).

Under the rubric of weight of the evidence review the dissent would simply undo these conclusions, essential to our express holding—which, to repeat, the Court of Appeals did not disturb—that the verdict was supported by legally sufficient evidence. All of the dissent's arguments—that defendant ostensibly "manifested an intent to kill," the argument relying on the one-on-one character of the shooting and the argument that the shooting was not "marked by uncommon brutality"—apply with equal force—or, more accurately, with an equal lack of force—to our express holding that the verdict was supported by legally sufficient evidence. The dissent does not and cannot point to anything in the evidence—not the fact that defendant assumed a shooter's stance or the fact that the bullet struck defendant's brother in the back—that would provide the thirteenth juror with a basis for concluding that although the verdict was supported by legally sufficient evidence, it was against the weight of the evidence.

In support of its position that defendant's conduct "manifested an intent to kill rather than depravity or indifference to human life," the dissent relies on *People v Payne* (3 NY3d 266 [2004], *supra*), ignoring not only that *Payne* was decided after defendant's trial, but both that nothing in the court's instructions to the jury remotely suggested that one fatal shot could not support a verdict of depraved indifference murder, and that the change in the law after the trial is irrelevant (*see People v Danielson*, 9 NY3d at 349). The dissent then claims that Justice Sandler's observation that people who fire handguns do not always hit the intended target (*People v Butler*, 86 AD2d at 815) "does not negate defendant's clear intent, under any standard, to shoot his brother in the back and affords *no support* for any argument that a jury could reasonably have found that defendant recklessly shot his brother under circumstances evincing a depraved indifference to human life" (emphasis added). Of course, however, we relied on exactly that observation in support of our conclusion that "the jury had a basis for concluding that defendant may not have intended that the bullet strike the

victim where it did" (43 AD3d at 290). What is manifest, accordingly, is that the dissent's claim that Justice Sandler's observation provides "no support" for the jury's verdict is nothing more than an improper effort to use weight of the evidence review to overturn the conclusion reached by the majority on the prior appeal.

Moreover, although the dissent's position that defendant "manifested an intent to kill" is one that now benefits defendant, it is exactly the opposite of the position defense counsel argued on summation. After devoting the bulk of his summation to the argument that defendant was not the shooter, counsel argued to the jury that if it accepted the testimony of the prosecutor's witnesses,

"the distance that the shot was fired, the fact that it was only one shot fired, does not amount to proof beyond a reasonable doubt that [defendant] intended to murder [his brother].

"Now I submit to you that if you fire a gun you, at least, maybe have an intent to cause serious physical injury but to cause the death, there is no proof of that. Look at the diagram, look at . . . People's Exhibit 5 . . . Look at the location where the people say that they were, look at the distance between the individuals. There is no testimony that the person who shot [defendant's brother] shot over him or was standing very close to him. There is at least twenty, thirty more feet away, only one shot fired."

In addition, counsel stressed the absence of testimony "of any animosity, any hatred, any . . . 'motive' for [defendant] to be willing to intentionally murder his brother." Nonetheless, sitting as the "thirteenth juror," the dissent concludes that defendant "manifested an intent to kill."

Finally, the dissent writes that "[t]his is simply not that rare exception alluded to by the Court of Appeals in *People v Payne* (3 NY3d at 272 n 2)." No juror listening to the court's instructions on the elements of depraved indifference murder, however, would have had the slightest reason to believe that there was any rule, let alone a rare exception to that rule, precluding a one-on-one shooting from qualifying as depraved indifference murder. The change in the law after defendant's trial, i.e., the promulgation of that rule in *Payne*, is irrelevant (*People v Danielson*, 9 NY3d at 349). So, too, is the change in the composition of the panel on this appeal.[7] Concur—Buckley, Catterson and McGuire, JJ.

---

**7.** The dissent maintains that the prior panel did not implicitly reject defendant's argument that the verdict was against the weight of the evidence.

*(n. cont'd)*

Mazzarelli, J.P., and Andrias, J., dissent in a memorandum by Andrias, J., as follows: I respectfully dissent as I believe the conviction for depraved indifference murder, as viewed in light of the court's jury charge, which reflected the law that was in effect at the time of the crime (*see People v Sanchez*, 98 NY2d 373, 379-380 [2002], explaining *People v Register*, 60 NY2d 270, 276-277 [1983], *cert denied* 466 US 953 [1984]), is against the weight of the evidence (*see People v Noble*, 86 NY2d 814 [1995]).

Defendant fatally shot his brother once in the back during a dispute over money in the street. This one-on-one shooting was not "marked by uncommon brutality" (*People v Payne*, 3 NY3d 266, 271 [2004]), and did not evince the mental culpability required for depraved indifference (*Sanchez*, 98 NY2d at 380). However, the evidence, including testimony that defendant brandished a revolver during the dispute and fired it at the victim as others, including children, stood nearby, supported a finding that defendant acts were reckless, as the jury determined, but not depraved (*see People v George*, 11 NY3d 848 [2008]; *People v Jean-Baptiste,* 11 NY3d 539 [2008]; *People v Atkinson*, 7 NY3d 765 [2006]; *People v McMillon*, 31 AD3d 136 [2006], *lv denied* 7 NY3d 815 [2006]; *People v Dudley*, 31 AD3d 264 [2006], *lv denied* 7 NY3d 866 [2006]). Thus, I would reduce defendant's murder conviction to manslaughter in the second degree.

Despite the majority's statement that the majority in defendant's previous appeal to this Court (43 AD3d 288 [2007]) implicitly rejected defendant's weight of the evidence argument, such statement is not borne out by a plain reading of that decision, which essentially set forth the majority's reasons why the evidence was sufficient based on the court's charge as given without objection. Defendant argues that, even under the standard applicable at the time of his trial, a typical one-on-one shooting did not qualify as a depraved indifference murder. The

---

The dissent, however, does not mention or come to grips with the fact that we expressly noted that defendant's "principal claim . . . is a two-fold challenge to the sufficiency and *weight of the evidence* supporting the verdict convicting him of depraved indifference murder" (43 AD3d at 289 [emphasis added]), or the fact that we discussed the reasons why the weight of the evidence had to be assessed in light of the elements of the crime as they were charged to the jury (*id.* at 291-292). Nor does the dissent mention or come to grips with the fact that we prefaced that discussion with the following statement: "Nor can defendant prevail, in the absence of review in the interest of justice, by contending that the verdict is against the weight of the evidence" (*id.* at 291). Not surprisingly, the dissent in the prior appeal never asserted that the majority had committed the elementary mistake of failing to accord defendant his right to weight of the evidence review. Albeit implicitly, the same dissenters now assert exactly that.

majority rejects this argument because at no point did the trial court instruct the jury that a "one-on-one shooting," typical or not, did not qualify as a depraved indifference murder and defendant never protested the absence of any such instruction. However, *People v Payne (supra)* and *People v Gonzalez* (1 NY3d 464 [2004]), the cases relied on by defendant, do not hinge on the substance of the court's charge to the jury. Rather, those cases, as well as *People v Hafeez* (100 NY2d 253 [2003]), made clear that a one-on-one shooting or knifing (or similar killing) can never, with rare exception, qualify as depraved indifference murder.

Indeed, Justice Catterson writing for a unanimous Court in *People v Dickerson* (42 AD3d 228, 234 [2007], *lv denied* 9 NY3d 960 [2007]) recognized that a conviction of depraved indifference murder may be found legally insufficient where the evidence demonstrates a "manifest intent to kill." He also recognized the very limited circumstances in which depraved indifference may be found in one-on-one killings, giving two examples not relevant here (abandoning a helpless and vulnerable victim in circumstances where the victim is highly likely to die, or where a defendant acts not to kill but to harm and engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim) (*id.*).

As found by the Court of Appeals, the original memorandum decision in this case did not indicate that the majority weighed the evidence in light of the elements of the crime as charged to the jury (10 NY3d 875 [2008]); however, the dissent clearly did, finding that "the verdict was against the weight of the evidence (*see generally People v Cahill*, 2 NY3d 14, 57-62 [2003]) with respect to the element of depraved indifference to human life, viewed in light of the court's charge to the jury on that element (*see People v Noble*, 86 NY2d 814 [1995])" (43 AD3d at 296).

While this was not a point-blank shooting as was the case in *People v Sanchez* (98 NY2d 373 [2002]) that defendant's conduct manifested an intent to kill rather than depravity or indifference to human life, as that term is generally understood, is evidenced by the majority's own description of the events, in which defendant took a "shooter's stance" and shot his brother once in the back as he ran ("Defendant stood on the sidewalk with his hands extended in front of him, holding the revolver with both hands. He pulled the trigger, shooting Amir once in the back").

As the Court of Appeals has said: "[I]f a defendant fatally shoots the intended victim once, it could be murder, manslaughter in the first or second degree or criminal negligence (or self-

defense), but not depraved indifference murder" (*People v Payne*, 3 NY3d at 272). That people, including trained police officers who fire handguns, do not always hit the intended target (*see People v Butler*, 86 AD2d 811, 815 [1982, Sandler, J., dissenting], *revd on dissenting mem* 57 NY2d 664 [1982]), does not negate defendant's clear intent, under any standard, to shoot his brother in the back and affords no support for any argument that a jury could reasonably have found that defendant recklessly shot his brother under circumstances evincing a depraved indifference to human life. This is simply not that rare exception alluded to by the Court of Appeals in *People v Payne* (3 NY3d at 272 n 2).

Accordingly, I would modify the judgment convicting defendant of murder in the second degree and criminal possession of a weapon in the third degree, on the facts, to the extent of reducing the murder conviction to manslaughter in the second degree and remanding for resentencing on that conviction, and otherwise affirm.